# WHEELING.

## BLACK'S ADMINISTRATOR *v.* THOMAS.

Submitted January 24, 1883—Decided June 30, 1883.

1. The verdict of a jury, which necessarily disposes of all the issues in the case, is sufficient, although it may not respond separately to each several issue or fact presented by the pleadings.   (p. 711.)

2. In an action of *assumpsit* the defendant pleads payment and files with his plea specifications of sets-off exceeding in amount the demand of the plaintiff, and the jury by its verdict finds for the defendant simply a gross sum.  HELD :

   That under section 9 of chapter 126 of the Code, such verdict must be interpreted as a finding that the sets-off of the defendant exceeded the amount to which the plaintiff was entitled by the sum so found, and the verdict is not, therefore, ambiguous or uncertain.  (p. 711.;

3. Where the evidence and not the facts is certified in the bill of exceptions the appellate court will not reverse the judgment unless, after rejecting all the conflicting parol evidence of the exceptor and giving full faith and credit to that of the adverse party, the decision of the trial-court still appears to be wrong. (p. 712.)

4. Where the matters certified in form as facts are in any respect conflicting, such certificate must be treated as containing the evidence and not the facts.   (p. 712.)

5. If the verdict can not be sustained according to the foregoing rules, it is as much the duty of the trial-court to set the same aside in such case as it is its duty to sustain the verdict when it does not contravene said rules ; and while the appellate court ought not to set aside the verdict with the same facility as the trial-court, because in such court the weight which must always be given to the .verdict of a jury fairly rendered is supplemented by that of the opinion of the judge who presided at the trial which is entitled to peculiar respect upon the question of a new trial upon the ground that the verdict is contrary to the evidence, still the action of the trial-court in such cases may be reviewed by the appellate court and in a clear and plain case it is the duty of that court to set aside the verdict and order a new trial.  (p. 712.)

6. Other rules and principles stated which should govern courts in denying or granting motions to set aside the verdict of a jury upon the ground that it is not warranted by the evidence.   (p. 712.)

7. A case in which the appellate court set aside a verdict and ordered a new trial upon the ground that the verdict was clearly and plainly unsupported by the evidence.  (p. 714.)

Writ of error to a judgment of the circuit court of the county of Putnam, rendered on the 9th day of March, 1878, in an action in said court then pending, wherein Villie Black & Co. were plaintiffs, and John C. Thomas was defendant, allowed upon a petition of William H. Hogeman, administrator of Villie Black, deceased.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts of the case are stated in the opinion of the Court.

W. H. Hogeman for plaintiff in error.

*Mollohan & Fontaine* and *Smith & Knight* for defendant in error cited 1 Bibb. 247; 2 Burr. 698; 1 Rob. (old) Pr. 355, and 7 Leigh 82.

SNYDER, JUDGE, announced the opinion of the Court:

This is a writ of error to a judgment of the circuit court of Putnam county entered May 3, 1880, affirming a judgment of the county court of said county.  The action was *assumpsit* brought in said county court, September 3, 1877, by the plaintiffs, Villie Black & Co., against the defendant, John C. Thomas, to recover eight hundred dollars for money advanced by the plaintiffs to the defendant between October 12, 1876, and April 21, 1877.  The defendant pleaded *non-assumpsit* and payment and filed specifications of set-off against the account of plaintiffs, "for twenty and one half months' services as agent in soliciting tobacco from October 5, 1875, to May 20, 1877, at fifty-five dollars per month, one thousand one hundred and twenty-seven dollars and forty cents."  Issues were joined on these pleas, a trial was had by jury and a verdict returned in these words:  "We, the jury, find for the defendant and assess his damages at one hundred and seventeen dollars and fifty cents."  The plaintiffs, before the jury had been discharged, moved the court not to record said verdict which motion the court overruled and the verdict was

recorded. The plaintiffs, then, moved the court to set aside the verdict and grant them a new trial, because the verdict was defective in form and contrary to law and the evidence, and also, because of new and material evidence discovered by them since the trial. In support of said motion they read two affidavits which entirely fail to show any diligence or facts to sustain said motion, and as they were not relied on in this Court, it is unnecessary to state their contents. The court overruled said motion and gave judgment for the defendant on the verdict. The plaintiffs duly excepted to the said rulings and judgment of the court and by their bill of exceptions all the material evidence is made part of the record.

The objection to the form of the verdict is untenable. It is claimed that under our statute it was the duty of the jury to find for the plaintiffs the amount of their claim and to find for the defendant the amount of his set-off, and if the latter exceeded the former the jury should specify that the verdict found for the defendant was the amount to which he was entitled in excess of the plaintiff's demand. This form of verdict may be more satisfactory and, perhaps, safer and better in practice.—Barton's Law Pr. 263. But such finding is not essential to the validity of the verdict. A finding which necessarily disposes of all the issues is a sufficient verdict, although it may not respond separately to each issue or fact presented by the pleading. *Lewis & Frazier* v. *Childers*, 13 W. Va. 1. In debt or *assumpsit*, where the defendant files an account of set-off, he is under our statute deemed to have brought a cross-action against the plaintiff for the amount of such account. And "on the trial of the issue in such case, the jury shall ascertain the amount to which the defendant is entitled and apply it as a set-off against the plaintiff's demand, and if the said amount be more than the plaintiff is entitled to, shall ascertain the amount of the excess, including principal and interest. Judgment in such case shall be for the defendant against the plaintiff for said excess, with interest from the date of the judgment till payment."—Code, chap. 126 sec. 9.

The verdict in this case was for a gross sum in favor of the defendant; and that, under the issues, was necessarily a find-

ing that the account of the defendant exceeded the amount
to which the plaintiffs were entitled to the extent of that
finding. The verdict is not, therefore, ambiguous or uncer-
tain.—1 Rob. Pr. (old ed.) 355, 367; *Lanier* v. *Harwell*, 6
Munf. 79.

The only other question and the controlling one in this
case is, did the court err in overruling the plaintiff's motion
to set aside the verdict upon the ground that it was not war-
ranted by the evidence?

It is always a delicate matter for a court and particularly
an appellate court to interfere with the verdict of the jury on
questions of fact. The courts of this State are peculiarly
jealous of any encroachments by the courts upon the prov-
ince of the jury which is made the judge of the weight and
credit to be attached to the evidence, and it is only in cases
of manifest abuse or plain departure from right and justice
that the courts can interfere with the finding of the jury in
such matters.—*State* v. *Thompson, infra.*

The rules of law as deduced from the decisions of the
appellate courts of Virginia and of this State in such cases
may be stated as follows:

I. The bill of exceptions must so present the case that the
appellate court may be able to determine whether the jury
has correctly applied the law to the facts in order that it may
safely correct any error committed by the jury—the pre-
sumption being always in favor of the correctness of the ver-
dict; and, therefore, unless the error complained of is made
to appear affirmatively it will not be disturbed.

II. Where it is practicable *the facts* and *not the evidence*
should be certified; but when there is a conflict or compli-
cation of the evidence so as to render it impracticable to
certify the facts, the court may certify the evidence—*Read's
Case*, 22 Gratt. 924.

III. Where the evidence only is certified the appellate
court will not reverse the judgment unless, after rejecting all
the conflicting parol evidence of the exceptor, and giving
full faith and credit to that of the adverse party, the decision
of the trial-court still appears to be wrong—*Newlin* v. *Beard*,
6 W. Va. 110.

IV. Where the matters certified in form as facts are in any

respect conflicting, such certificate must be treated as containing the evidence and not the facts; because facts cannot be conflicting, but åre necessarily consistent with each other —*Read's Case, supra.*

V. The verdict will be set aside, when the issue involves facts only, if the facts proved clearly required a verdict different from that found by the jury—*Pryor's Case,* 27 Gratt. 1009.

VI. A new trial ought not to be granted on the ground that the verdict is contrary to the ·evidence, except in cases of plain deviation from right and justice; not in a doubtful case merely because the court, if on the jury, would have found a different verdict. Every reasonable presumption should be made in favor of the verdict of a jury fairly rendered, and such verdict ought not to be interfered with by the court unless manifest injustice and wrong has been done, or unless the verdict is plainly not warranted by the facts proved—*Blosser* v. *Harshbarger,* 21 Gratt. 216.

VII. Where some evidence has been given which tends to prove the fact in issue, or the evidence consists of circumstances and presumptions, a new trial will not be granted merely because the court is of opinion that the preponderance of evidence required a different verdict. To warrant a new trial in such a case the evidence should be clearly and plainly insufficient to warrant the finding of the jury— *Grayson's Case,* 6 Gratt. 712; *Sheff* v. *The City of Huntington,* 16 W. Va. 307.

VIII. These rules and principles apply *a fortiori* to an appellate court; for in that court, there is superadded the weight which must always be given to the verdict of a jury fairly rendered, that of the opinion of the judge who presided at the trial, which is entitled to peculiar respect upon the question of a new trial asked upon the ground that the verdict is not warranted by the evidence—*Burgh* v. *Shanks,* 5 Leigh 598.

IX. If the verdict tested by the foregoing rules is ascertained to be wrong and unwarranted, it is as much the duty of the trial-court to set aside such verdict and grant a new trial as it is to sustain the verdict when it does not contravene said rules; and while the appellate court ought not to set

aside the verdict with the same degree of facility as the trial-court, because in such court the weight of the opinion of the judge of the trial-court refusing to set it aside must be added to that of the jury in support of the verdict, still the action of the trial-court may be reviewed by the appellate court and in a clear and plain case it is the duty of that court to set aside the verdict and grant a new trial—*State* v. *Williams,* 14 W. Va. 851.

Applying these well settled rules of law to the case at bar, it seems to me the verdict of the jury cannot be sustained. The bill of exceptions purports to give all the material facts, but as there is some, though not very material, contradiction between the testimony of the plaintiffs and that of the defendant, I will treat it as a certificate of the evidence and not of the facts, that being the more favorable view for the defendant in error. The evidence certified so far as it is deemed necessary to state it is as follows:

The plaintiffs proved that they were commission merchants dealing in tobacco, having their ware-house and place of business in the city of Cincinnati, Ohio; that they had as their agent in West Virginia one J. D. Nalle whose business it was to visit the different counties of said State and solicit consignments of tobacco to their house and look after their interests; but that he had no authority to employ agents for them; that said Nalle died, on April 12, 1877, before the institution of this action; that the account sued on is for money advanced by them to the defendant on account of tobacco to be furnished by him to them, but that he failed to furnish them any tobacco or return the money so furnished; that each of the plaintiffs testified that they had never employed the defendant as their agent and never knew that he pretended to be such or that he asserted any claim against them for services until they demanded payment of the account sued on a short time before this action was brought; that on May 12, 1877, they wrote to defendant enclosing a statement of the account sued on and a blank note for the amount due thereon requesting him to sign the note and return it; that, on June 10, 1877, he replied by letter in which he says:

"I received all the money (principal) with which you have

me charged, but I have no credits for services which I certainly am entitled. Mr. J. D. Nalle came to me in the month of October, 1875, and employed me to solicit shipments for your house, and to attend to any and all business with which you might see fit to entrust me, and that I should be amply paid for such services; and under the contract I think, certainly, that I rendered services for which I am entitled to a credit on my account. I wanted to mention it last September when I was down with my tobacco; wanted to say something about it when I received my money from your bookkeeper, but you being absent at the time, Mr. Nalle told me that he would see you himself for me; and he told me afterwards that he had seen you and arranged the matter all satisfactorily with you, and that I would be well paid."

The plaintiffs also proved that, prior to September 30, 1876, there were unsettled accounts between them and defendant which were on that day settled and a balance of three hundred and sixty-six dollars and forty-nine cents paid to defendant in full of the settlement by their book-keeper who testified that said settlement was satisfactory to the defendant, except that he claimed an item of thirty dollars and thirty-four cents for interest ought not to be charged to him because, as he said, he had done some service for Mr. Nalle for which the firm ought to knock off said interest; that Mr. Nalle was then present and said he would arrange the services with defendant, and the said item was not taken off; that about April 20, 1877, the witness presented to defendant the account sued on and he made no objection to it, said it was correct; that defendant asked witness to get him the position of agent for plaintiffs in the place of Nalle who had died, but he made no claim for services as agent or otherwise. By their attorney the plaintiffs proved that, a short time before the institution of this action, the defendant admitted to said attorney that he was owing the plaintiffs some money, but said that he had rendered some services which he would say nothing about if plaintiffs would appoint him their agent and, if not, he wanted pay.

The defendant as a witness on his own behalf admitted that the plaintiffs' account was correct, and testified, in support of his account of set-off, that he was, on October 5,

1875, hired by J. D. Nalle, the plaintiffs' agent, to solicit tobacco for plaintiffs; that Nalle said they would pay well, that they had paid Wm. Martin for similar services sixty dollars per month, but could not pay quite so much this year owing to hard times; that he acted under that employment *in parts* of Putnam, Mason, Jackson and Kanawha counties; that he was so employed up to May 20, 1877; that Nalle told him in October, 1876, that he had made arrangements and defendant would get his pay for services; that on July 21, 1876, he spoke to plaintiffs about his agency and they said it was all right and they would pay; that he never told plaintiffs' book-keeper that the plaintiffs' account was all right; that at the time of the settlement of September 30, 1876, he told said book-keeper the firm ought not to charge the interest item in their account, that he then claimed he ought to be paid for his services and that neither of the plaintiffs were present at said settlement. On cross-examination the defendant testified that he had not since September 30, 1876, shipped any tobacco of his own or any one else to plaintiffs; that during the time charged for in his account of set-off he taught school for over five months, and had during the whole of said time been a justice and had attended to his farm; that when asked to state what services he had rendered the plaintiffs, he said he had nothing to do with that as he claimed under his contract with Nalle and ought to have fifty-five dollars per month; that he had kept no account and could not tell how much time he had been occupied in actually attending to matters for Nalle or the plaintiffs. The defendant proved by other witnesses that said Nalle had in the fall of 1875, told defendant that he wanted him to solicit tobacco for plaintiffs and that they would pay him well for it; that Nalle recognized him as agent and that he attended to some matters of business for plaintiffs, prior to September 30, 1876. There was some other testimony, which I deem it unnecessary to state, as the above embraces all that is material on the question to be determined by this Court.

It is not intended, nor is it proper for this Court, as the case is now presented, to decide what, if any, services were rendered by the defendant for plaintiffs, or what part, if any,

of his account of set-off should be allowed him in this action. All that we intend to decide in that regard is, whether upon the evidence certified, the jury was justified in finding for the defendant one hundred and seventeen dollars and fifty cents in excess of the plaintiffs' demand of eight hundred dollars?

The correctness of the plaintiffs' account was admitted on the trial by the defendant; consequently, the only subject of controversy was the defendant's account of set-off, and the burden of proving this account was on the defendant. If we wholly disregard the parol evidence of the plaintiffs in error which is in conflict with that of the defendant in error, as we must do under the rules of law before stated, and concede that the jury was justified in finding that J. D. Nalle was authorized to employ the defendant, that he did employ him to solicit tobacco for the plaintiffs, and that he "acted under that employment *in parts* of Putnam, Mason, Jackson and Kanawha counties," it will still remain to be established by the evidence that the defendant had an express agreement for a *specified salary* per month, or that he rendered services for the plaintiffs which were reasonably worth the amount, say nine hundred and seventeen dollars and fifty cents, which the jury must necessarily have found in his favor by their verdict.

The only pretense of any express agreement for his services is, that the plaintiffs' agent, Nalle, told him he should be well paid and that the previous year the plaintiffs had paid Martin sixty dollars per month for similar services, but they could not pay quite that much this year. Certainly this was no agreement to pay defendant fifty-five dollars per month, or any other specified sum. The most that could be inferred from it would be that he would be well paid, and to give him some idea of what the plaintiffs would probably agree to pay, Nalle stated what had been paid Martin. It cannot, in my judgment, be justly considered anything more than an opinion of Nalle as an approximation of what the defendant might expect the plaintiffs would agree to pay. It was certainly no contract express or implied that they would pay fifty-five dollars per month. That the defendant so understood it is evident; for according to the testimony, at the settlement of September 30, 1876, Nalle was present and the

defendant then did not claim that he was entitled to any specified sum, but simply insisted, as he states himself, that in consideration of services rendered by him the plaintiffs ought to knock off the thirty dollars and thirty-four cents of interest charged to him. This occurred more than eleven months after his alleged employment when, at fifty-five dollars per month, the plaintiffs would then have owed him over six hundred dollars on his agreement. Is it reasonable, can it be even entertained for a moment, that having this large claim against the plaintiffs with Nalle present, the person with whom the alleged agreement had been made, to establish it if just, the defendant would have been so extremely liberal, I may even say so reckless, as to have surrendered the whole of it for thirty dollars and thirty-four cents? His pretension at that time was even less than this, for he did not then claim the thirty dollars and thirty-four cents as a sum to which he was of right entitled, but simply suggested as his opinion that for his services the plaintiffs ought to knock off this comparatively insignificant item. It was also proved and not contradicted by the defendant that a short time before this action was brought he admitted to the plaintiffs' attorney that he was indebted to the plaintiffs, but that he had done some services which he would say nothing about if they would appoint him their agent. At this time, according to the finding of the jury, the plaintiffs were indebted to him for services over nine hundred dollars. There is nothing in this case to justify the conclusion that if such had been the fact the defendant would have been willing to surrender such a large debt for such a small consideration or rather for no consideration. But the evidence which is absolutely conclusive of the defendant's understanding of the character of his engagement, is his letter of June 10, 1877, written to the plaintiffs but a few months before the bringing of this action. In this he aserts no claim whatever of any contract price for his services, but he simply intimates it and his language plainly indicates that he then believed he was for the first time notifying the plaintiffs that he had been employed or had any claim against them. He says, that he "had rendered services for which he he *is entitled to a credit* on his account." There is no mention here of any

fifty-five dollars per month or other specified price; but there is a clear admission that the value of his services were less than the account of the plaintiffs. He does not deny, but by strong implication admits, that he owes the plaintiffs and only suggests that he ought *to have a credit* for his services. He knew what the plaintiffs' demand was and if his account had exceeded theirs he would have said so, and not contented himself with a precatory claim for a credit. I think it may, therefore, be safely held that the evidence is plainly insufficient to establish any express agreement that the defendant was to have a fixed salary.

It is equally plain that he has failed to prove that any services he may have rendered the plaintiffs were reasonably worth the sum necessarily allowed him by the jury. When asked as a witness what services he had rendered and the value thereof he contented himself by stating that he had nothing to do with that matter, that he claimed under his contract. We have already seen that he failed to establish any contract price for his services. Having then no contract fixing the price and having declined to state what, if any, services he rendered or the value thereof, there was no evidence from which the jury could even estimate what he was entitled to under his account of set-off. The defendant it is true testified that "*he had acted*" (what this means we are not informed) "*under his employment in parts*" of certain counties named by him, but he states expressly that he kept no account and could not tell how much of the time charged for he was occupied in attending to the business of the plaintiffs. He states that during the whole of that time he was a justice, that he attended to his farm, taught school over five months and was otherwise engaged in affairs not connected with the business of the plaintiffs. In fact he did not offer to show by his own or any other testimony, that he did anything whatever for the plaintiffs after September 30, 1876, but on the contrary he admitted that he had not since that date shipped any tobacco of his own or any one else to the plaintiffs. Notwithstanding this absence of proof and admission, the defendant has charged and the jury has evidently allowed him for services subsequent to that date; for giving him the price he claims for the time prior to that date it would fall far short of the sum

allowed him by the jury. Indeed, the inference from the testimony of the defendant himself seems to be rather that he did not than that he did render services for the plaintiffs during any or the greater part of the time for which he has charged them. It necessarily follows, therefore, that the defendant having failed to establish any express agreement for a specific salary, or furnish any sufficient evidence of the character, extent or worth of his services from which the jury could properly estimate their value—certainly none to warrant the finding of a sum in excess of the plaintiffs' demand, the verdict was clearly and plainly against the evidence.

I am, therefore, of opinion that the county court erred in overruling the plaintiffs' motion to set aside the verdict and grant them a new trial, and that the circuit court erred in affirming said judgment, and that the judgment of the circuit court must be reversed with costs to the plaintiff in error. And this Court proceeding to pronounce such judgment as the said circuit court should have rendered, it is considered that the said judgment of the county court be reversed with costs to the plaintiffs in error in that court, that the verdict of the jury be set aside and a new trial granted, the costs of the former trial to abide the final judgment in the action; and this case is remanded to the said circuit court to be therein further proceeded in according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CASE REMANDED.