# WHEELING.

BULLINGTON v. NEWPORT NEWS & M. V. Co.

*(GREEN, JUDGE, absent.)

Submitted June 17, 1889.—Decided June 24, 1889.

1. DAMAGES—INSTRUCTIONS—RAILROADS.

In an action for damages against a railroad company for killing stock upon their track, the following instructions asked for and given at the instance of the plaintiff are not erroneous, evidence having been introduced before the jury tending to prove the hypothetical statements therein contained : "(1) If the jury believe from the evidence, that the defendant's engine and caboose killed the plaintiff's horses, and that the said caboose had upon it two brakemen and a conductor, and that the engine had the engineer and. fireman aboard, and that, while the alarm-whistle was blowing, no brake was applied upon said caboose, but that said engine and caboose chased said horses and knocked them off without any apparent slowing of the train, then the said defendant is guilty of negligence, and the jury will find for the plaintiff. (2) If the jury believe from the evidence, that defendant's engine chased plaintiff's horses 600 or 800 feet, and that, when said horses were struck, said engine had not slacked its speed, then there was negligence on the part of the employes of the defendant to check or stop said train, and in that case they are instructed to find for the plaintiff. (3) If the jury believe from the evidence, that the defendant's train killed plaintiff's horses, and that said train was a light train ; that it had upon it two brakemen, a fireman and engineer ; and if they further be-

*On account of illness.

lieve from the evidence, that the alarm-whistle sounded 200 feet away from the horses, and that said brakemen and conductor took no steps to prevent the destruction of plaintiff's horses,— then and in that case there is not only a want of care but negligence on the part of the defendant, and the jury will find for the plaintiff."

2. DAMAGES—INSTRUCTIONS.

The jury in this case having fixed the damages at $200.00, the value of the horses ascertained by the witnesses other than the plaintiff, without reference to any peculiar or particular value, it was not error in the court to reject the following instruction asked for by the defendant, as the defendant was not prejudiced thereby : "The court instructs the jury, that, while the measure of damages is the value of the stock when killed, that value is the market-value of such stock not some peculiar or particular value attached to it by plaintiff."

3. EVIDENCE.

A question propounded to a witness, who is not an expert, calling for his opinion, which is not responded to by said witness expressing his opinion, is not such an error as would prejudice the party excepting to said question.

4. EVIDENCE.

In the circumstances of this case it was not proper to ask the engineer, if he did all in his power to avoid striking the horses of the plaintiff ; and the court did not err in rejecting said question.

*L. A. Martin* and *Brown & Jackson* for plaintiff in error.

*Ferguson & Chilton* for defendant in error.

ENGLISH, JUDGE :

This was a suit brought by D. H. Bullington before L. S. Lee, a justice of the peace of Kanawha county, on the 28th day of April, 1887, against the Newport News & Mississippi Valley Company, a corporation, for the recovery of damages for a wrong, in which damages were claimed amounting to $250.00. It seems, that said corporation was operating a railroad through said county, and on the 24th day of April, 1887, a locomotive of defendant with tender and caboose attached under the control and management of the agents of said corporation killed two horses belonging to the plaintiff, which were grazing upon the commons near said railroad track at Brownstown, thereby damaging the plaintiff, as he claimed, to the amount of $250.00. Said company appeared

before said justice and denied the allegations of the plaintiff's complaint, which in any way charged the killing of said horses to the negligence of defendant or any of its agents or employes, and pleaded not guilty to said complaint. The case was tried before a jury of six, who found for the plaintiff, and assessed his damages at $200.00.

The defendant by its attorney moved said justice to set aside the said verdict, (1) because the same was contrary to law and the evidence and without sufficient evidence; (2) because the same was contrary to the instructions of the court; (3) because of erroneous rulings in giving and refusing instructions to the jury; (4) because of erroneous evidence allowed to go to the jury,—which motion was overruled, and the defendant then and there excepted and took a bill of exceptions setting forth all the evidence given and all the proceedings had before said justice, which was signed and sealed by said justice; and on the 11th day of July, 1887, the defendant sued out a writ of *certiorari* directed to said justice, reciting the fact of the rendition of said verdict in favor of the plaintiff for $200.00, and judgment on the same requiring him to bring before the said Circuit Court of Kanawha county the record and proceedings had before him in the said action, including said judgment, in order that the same might be reviewed in and by said court and, if error be found therein, be reversed.

On the 6th day of January, 1888, the Circuit Court of Kanawha county proceeded to hear said cause upon said writ of *certiorari*, and upon the examination of said transcript held, that there was error in the judgment complained of in the petition for said writ, (1) in giving the several instructions to the jury asked for by the plaintiff; (2) in refusing to give the instructions asked for by the defendant; (3) in allowing improper evidence to go to the jury; (4) in refusing to set aside the verdict of the jury and grant the defendant a new trial; and not only reversed the judgment but dismissed the plaintiff's action.

Did the court below commit an error in reversing the judgment of said justice and dismissing the plaintiff's action?

Said court seems to have based its opinion first upon er-

roneous instructions given to the jury at the instance of the plaintiff. These instructions were three in number and read as follows:

" No. 1. If the jury believe from the evidence that the defendant's engine and caboose killed the plaintiff's horses, and the said caboose had upon it two brakemen and a conductor, and the engine had the engineer and fireman aboard, and that while the alarm-whistle was blowing no brake was applied upon said caboose, but that said engine and caboose chased said horses, and knocked them off, without any apparent slowing of the train, then the said defendant is guilty of negligence, and the jury will find for the plaintiff."

" No. 2. If the jury believe from the evidence that defendant's engine chased plaintiff's horses 600 or 800 feet, and that where said horses were struck said engine had not slacked its speed, then there was negligence on the part of the employes of the defendant to check or stop said train, and in that case they are instructed to find for the plaintiff."

" No. 3. If the jury believe from the evidence that defendant's train killed plaintiff's horses, and that said train was a light train; that it had upon it two brakemen, a fireman, and engineer; and if they further believe from the evidence that the alarm-whistle sounded 200 feet away from the horses, and that said brakemen and conductor took no steps to prevent the destruction of plaintiff's horses,—then, and in that case, there is not only a want of care, but negligence, on the part of defendant, and the jury will find for the plaintiff."

Now, while it has been held, that it is error to instruct a jury hypothetically upon a state of facts, when there is no evidence tending to prove such facts, and that it is error to instruct upon a conjectural state of facts, unless there is evidence tending to prove the same, (see *Winkler* v. *Railroad Co.*, 12 W. Va. 699; *Vinal* v. *Core*, 18 W. Va. 1,) yet, if the instruction propounds the law and does not mislead the jury, it should be given, (see *McClintic* v. *Ocheltree*, 4 W. Va. 249;) and in the case of *Railroad Co.* v. *Skeels*, 3 W. Va. 556, it was held "competent to instruct the jury that, if from the evidence they believe so and so, then certain consequences will follow."

The proper determination of the question as to the correctness of these three instructions requires us to look to the evidence, which was introduced before the jury, and see what it discloses in regard to the conduct of the defendant's employes in the management of their train about the time the horses were killed. Was there any evidence tending to show, that the ordinary precautions were not used by those in charge of the train, such precautions, as should be used when horses or stock of any character are discovered upon the track in front of a locomotive and train moving at the speed of twenty miles an hour?

Barney Haynes, the engineer on the locomotive, testified, that he saw one horse, the light one, a dun, coming up the bank above the culvert on the path. It started to run on the side of the track when he blew the whistle. It then jumped on the track. "I was about one telegraph pole or 200 feet away, as near as I can come at it, when I blew the whistle. The horse jumped on the track. I reversed my engine and opened the lever, and the tank-brake was set by the fireman, and the throttle was pulled open. The horse ran between 200 and 300 feet and stopped on the track" etc. On cross-examination he stated: "When I saw the horse I was running about twenty miles an hour, and when I struck the horse I was running about ten or twelve miles an hour."

On the other hand, Mrs. Snodgrass, Charles Workman, and C. A. Harrold, who were looking on, at the time said horses were killed, from points near the railroad, all state, that the train seemed to them to increase its speed, after the alarm-whistle was first sounded, until it struck the horses. Here there was evidence tending to prove that the speed of the train was increased instead of being slackened.

The court cannot pass upon the weight of the testimony without invading the province of the jury. These questions of fact must be left to the jury, and, as there appears to be evidence tending to prove the hypothetic statement contained in all three of the instructions given to the jury by the justice at the instance of the plaintiff, we can see no error in said instructions.

Instruction No. 9, which was asked for by the defendant and was refused by the court, is in these words: "The court

instructs the jury, that, while the measure of damages is the value of the stock, when killed that such value is the market value of such stock, and not some peculiar or particular value attached to it by the plaintiff." While we are of opinion that said instruction properly propounds the law in regard to the measure of damages in cases of this character, (see Sedg. Dam. 559, and note, and *Edwards* v. *Beebe*, 48 Barb. 106,) and it was error in the justice to reject such instruction, yet the error is not such as operated to the prejudice of the defendant in error, because on looking to the record we find that the jury found the damages to be $200.00, which was the value placed upon the horses by disinterested witnesses, while the plaintiff claimed that they were worth to him $250.00.

The next question to consider is, whether upon the trial of said action the justice ruled properly upon the admission and rejection of the testimony offered. The witness Charles Workman introduced by the plaintiff was asked: "If there had been an effort on the part of the persons in charge of the train, with appliances ordinarily used, could the train have been stopped or slowed up in the distance you have stated (meaning 450 feet) so as to have prevented the accident and injury to the horses of the plaintiff?" which question was objected to by defendant as leading and improper, which objection the court overruled. This witness had stated, that he lived in Brownstown, where, it appears, there was a station, and, although the question calls for his opinion, it seems to me, it was a question, upon which he might well express an opinion from every-day observation, although he was not an expert, and the defendant might easily have shown on cross-examination the weight and value of his opinion.

The next question objected to was one asked the witness Barney Mackinsbridge, who was introduced by the plaintiff and was asked: "Did you see or observe any effort on the part of those in charge of the train to slow up or prevent the accident and injury to plaintiff's horses?" I can not see, that any rule of evidence was violated or injustice done the defendant in allowing that question to be asked.

When the plaintiff had concluded his examination of witnesses in chief, the defendant by its counsel moved to strike

out all the evidence given on behalf of the plaintiff, upon the ground that the same was insufficient in law to entitle the plaintiff to a verdict and judgment, which motion was over-ruled, and the defendant excepted.

The defendant in introducing its testimony asked the witness Barney Haynes, the engineer: "Did you as engineer of that train do all in your power to prevent striking the horses of the plaintiff?" to which question the plaintiff objected, which objection the justice sustained. The witness was then asked: "Could you after seeing the horse have prevented striking it?" and the plaintiff objected, which objection was sustained. Both of these rulings I regard as correct, each question being improper. It would have been in accordance with the rules of evidence to let the witness state what he did, and allow the jury to judge as to whether he could have done more. The witness had already stated the distance of the horses from the train and their position with reference to the track, when he first discovered them, the movements made by the horses, and what was done by him with reference to the machinery of the train before the engine struck the horses. If anything was left undone by him, which he ought to have done, he could easily have stated it. It seems to me the jury were entitled to know what he did do; and that it was not proper to ask him if he did all in his power, as the jury might not know what was in his power, and the expression is very indefinite; and the other question asked is the same as the first in different language.

The next question asked this witness by plaintiff, and objected to by defendant, was as follows: "Do you say, that the four or five witnesses who have testified here that the horses was standing on the track before you whistled are all mistaken as to the horse's position, and that you alone knew its exact position?" While this question may assume some things, that did not exist, I do not think, that the defendant was prejudiced by allowing it to be answered, and the witness to again explain what he had said in reference to the position of the horses.

C. W. Matthews was asked by plaintiff: "Did you not consider the killing of these horses a great piece of carelessness on the part of the railroad employes, and did you not

so state to the plaintiff and his attorney and witnesses on the day first set for trial in this case?" The defendant objected, and the objection, as we think, was properly overruled, as the question was proper in laying the foundation for an impeachment of the witness.

The plaintiff then asked one Allison Myers this question: "Do you have any knowledge of how long it takes to stop an engine and tender running at the rate of twenty miles an hour, or in what distance it could be stopped in from any experience of yours, from observation or otherwise?" which was objected to by defendant, and the objection overruled. The witness had already stated, that he was forty one years of age, never worked on a train or engine, had lived on the railroad ever since it was built, but had no experience in running a train or engine. As a matter of course he could only speak from observation, but it does not seem to me, that the justice erred in allowing him to state, whether he had any knowledge in regard to said matters or not, nor do I see any good reason, why the next question asked the witness and objected to by the defendant should not have been answered by him, as it was.

D. P. Kegley, the next witness, who stated that he had had some experience as a brakeman on the C. & O. R. R., was asked by plaintiff to state in what distance such a train could be stopped from the west end of Lens Creek culvert going east,—how many feet,—if he knew the ground; and the defendant objected, and the objection was overruled, and he answered: "Well, I can't hardly tell. It looks to me like they ought to stop in 300 or 400 feet. It is a guess. I don't know; it is my opinion." The question was objectionable, yet the answer seems so indefinite and uncertain, that I do not think the defendant was prejudiced materially by it.

These are all the points raised by objections to the testimony in the case before the justice, and the evidence was certified, not the facts proved; and under the rulings in the case of *Black's Adm'rs* v. *Thomas*, 21 W. Va. 709, "the appellate court should not reverse the judgment, unless after rejecting all the conflicting parol evidence of the exceptor and giving full faith and credit to that of the adverse party the decision of the trial-court still appears to be wrong."

Applying these principles to this case I am of opinion, that the judgment of the Circuit Court of Kanawha county should be reversed; and this Court proceeding to render such judgment as should have been rendered by said Circuit Court, the judgment of said justice is affirmed; and the defendant in error must pay the costs of this writ of error.

AFFIRMED.