# WHEELING.

## CHENOWITH *v.* COUNTY COURT.

Submitted June 14, 1889.—Decided June 28, 1889.

1. CONTRACT—BURDEN OF PROOF.

   Where a county court made a contract for the construction of a bridge in accordence with certain specifications attached to and made part of the contract, in a suit by the contractors to recover a balance claimed to be due them on said contract, after the work was completed and received by the county, as they claim, the plaintiff, must show affirmatively, that they have complied with said contract and specifications, or that said work has been received, before they will be entitled to recover.

2. CONTRACT—EVIDENCE.

   If the plaintiffs themselves offer in evidence an order of the county court, which shows, that the county court acting upon

the report of the committee appointed to superintend the building of said bridge, which stated that it would take all, that remained unpaid, to make good certain deficiencies in said work; and shows on its face, that said court declines to receive and pay for said work, said order is competent evidence upon the question as to whether said work had been received by the county or not. Following *Kinsley* v. *Monongalia Co.* 31 W. Va. 464 (7 S. E. Rep. 445.)

3. REVERSAL OF DECREE &C.—BILL OF EXCEPTIONS.

When a bill of exceptions contains a certificate of all the testimony offered, instead of all the facts proved, the court can not reverse the judgment of the court below for refusal to set the verdict aside as contrary to evidence, unless by rejecting all the conflicting evidence of the exceptor, and giving full force and credit to that of the adverse party, the decision of the court below is plainly wrong.

*O. Johnson* and *H. Peck* for plaintiff in error.

*R. S. Blair* and *H. C. Showalter* for defendants in error.

ENGLISH, JUDGE:

This was an action of *assumpsit* brought in the Circuit Court of Ritchie county by Eli Chenowith and O. S. Fought, who sued for the use and benefit of W. H. Thomas and O. S. Fought, against the county of Ritchie to recover a balance of $798.15 alleged to have been due on the 29th day of August, 1884, upon a contract entered into between A. C. Barnard as president of the County Court of Ritchie county and said Eli Chenowith and O. S. Fought for the construction of a bridge across the North Fork of Hughes river near the house of E. R. Taylor, to be completed on the 1st of October, 1884, in accordance with specifications accompanying and referred to in said agreement.

This case seems to have been twice before a jury in the county of Ritchie, and, they failing to agree for cause shown to the court, it was transferred to the county of Doddridge, in which county a trial was had, which terminated on the 1st day of December, 1888, in a verdict for the plaintiffs for the sum of $1,002.30, with interest thereon from that date, and judgment was rendered against the defendant for that amount in said court. The defendant by its counsel moved to set aside the verdict of the jury, and grant it a new trial, which

motion was overruled; to, which action of the court the defendant excepted and prayed, that the evidence given in the cause might be certified and saved to it as a part of the record, and that certain exceptions taken by the defendant to rulings of the court might be saved to it as part of the record in the cause, which was accordingly done, and from said judgment and rulings of said court the defendant applied for and obtained a writ of error to this court.

The first exception relied upon by the defendant, as constituting error in the ruling of the court upon said trial, was in allowing copies of said contract and specifications to be given in evidence to the jury. In the second volume of Greenleaf on Evidence, p. 9, § 11, the author says: "A further preliminary observation may here be made applicable to every action founded on a written document, namely, that the first step in the evidence on the side of the plaintiff is the production of the document itself." But our statute (Code, c. 120, § 5) seems to have changed the common-law by providing: "A copy of any record or paper in the clerk's office of any court, * * * attested by the officer in whose office the same is, may be admitted as evidence in lieu of the original," *etc.* I think therefore the court committed no error in admitting copies of said contract and specifications to be read as evidence before the jury, especially when the order of the County Court awarding the contract to construct said bridge to Chenowith and Fought, and accepting their bond for the performance of the same, directed that said bond and contract be filed in the office of the clerk of said County Court, and being so filed the clerk was authorized to make a certified copy of the same, and said certified copy was doubtless the best evidence the plaintiff could produce of said contract.

The second error relied upon by the plaintiff in error is, that the court erred in admitting an order of the County Court of Ritchie county appointing E. J. Taylor, E. R. Taylor, and James M. Wilson a committee to advertise for sealed bids for an iron bridge or wooden arch bridge to be erected across the North Fork of Hughes river near the residence of E. R. Taylor, prescribing the time that notice should be given, and requiring said committee to report their

proceedings to the court, when the court would decide the character of the bridge to be built. We find, however, by reference to the case of *Kinsley* v. *Monongalia Co.*, 31 W. Va. 454, (7 S. E. Rep. 445)—which was a similar case to the one under consideration, that Kinsley having brought an action of *assumpsit* against said county to recover for his services rendered in constructing a bridge,—this court in delivering its opinion says: " It is also insisted that the court erred in refusing to admit in evidence an order of the County Court. A number of orders were properly admitted, such as the order appointing viewers; the order appointing commissioners to contract for the work; the order requiring certain money to be paid to the contractor," *etc.* The order, to which said second exception refers, was an order appointing a committe to advertise for sealed proposals, and we think it is almost identical with the order, which was held to be properly admitted in said last-named case, that it is a link in the plaintiff's evidence, which is necessary in order to make out his case, and can not be regarded as irrelevant, and the said objection was properly overruled.

The next point relied on by the plaintiff in error is, that the court erred in sustaining the objection made by plaintiff's counsel to the question asked the witness, A. C. Barnard, who appears to have been a member of the County Court of Ritchie county, when said bridge was being constructed. The question objected to was as follows: " Did the County Court at any time accept that bridge or any part of it and take it off the contractor's hands?" We think the court erred in sustaining said objection. It is true to some extent, that a court can only speak by its record, but A. C. Barnard although one of the members of the court and a component part thereof when sitting as a court, was not the court nor any part of it, when said court was not in session and acting as a court; and when he was asked to state a fact, which might well be supposed to be within his knowledge, to wit, whether the County Court did at any time accept said bridge or any part of it, it seems to us, he might state the fact affirmatively or negatively without going to the order-book, and reading the orders made indicating the acceptance or rejection of said bridge. It does not seem

to us, that the question is objectionable, on the ground that it is leading or irrelevant; it does not suggest the answer expected, and leaves him free to answer it as he chooses. The witness should have been allowed to answer the question.

The fourth assignment of error is as to the action of the court in refusing to allow the witness E. R. Taylor to answer the following questions, to wit: "Was it or not this digging that caused the wing walls to fall down?" and, "What caused the wing wall to fall?" also: "Were the committee and the contractor upon the bridge-site, about the time the contract was entered into, for the purpose of ascertaining upon what the abutment would rest?" And when the witness answered, "Yes, sir; they ascertained upon what it should rest;" he was asked, "Upon what" and the court refused to allow him to answer. It will be remembered, that the plaintiff had already introduced and read in evidence the contract and specifications for the erection and construction of said bridge. These papers clearly show, that said abutments were to rest upon the solid rock, and the relevancy of the questions is apparent, when it is considered, that the committee and contractors went upon the site to ascertain, whether it was possible or practicable to place the said abutments upon a solid foundation; and after making the examination the contract was drawn providing, that said abutments should set on solid rock base. This evidence tends to show, that the contractors did not enter into said agreement unadvisedly, but after examining the location with the committee, and it is not to be presumed, that they would have contracted to place the abutments on a solid rock base, if they had not ascertained that the rock was there. As to the other questions, he should have been permitted to answer the question, "What caused that wing to fall?" because his answer to that question may have disclosed the character of the foundation, upon which said wing wall rested, and may have shown, that its fall was not occasioned by digging the dirt away from it.

The next exception relied on by the plaintiff in error is to the action of the court in overruling its objection to a question asked the witness, O. S. Fought, "as to the present

condition of the abutment." It seems to us, that this question was relevant, and that the witness should have been allowed to answer; for the reason that the answer would tend to throw light upon the original character of the work, demonstrate its weak points or show whether it was in conformity with the contract in such respects, as would insure its durability.

The sixth assignment of error claims, that the court erred in refusing to allow the witness, John P. Wildman, to testify in rebuttal. This witness was introduced as an expert stonemason, who stated that he had worked at the business since 1857 or 1858, and was introduced by way of rebuttal to the evidence of O'Kelly, Hart and Hibbs, who, after the plaintiffs had rested, were allowed to speak of the present condition of the abutment, after the court had allowed both parties to introduce such evidence; and when said witness had stated, that he had worked on pitch and range work and all kinds of work, arching tunnels, building abutments for bridges, and on house-work, and that he saw this abutment in February, 1885, and when he was asked to state what character of work that was,—the question was objected to by plaintiffs' counsel, and the court sustained the objection. This ruling of the court, it seems to us, was erroneous, as other witnesses had been allowed to testify as experts for plaintiffs in regard to the character of the work,—the witness Wildman should also have been allowed to testify in regard to the same matter by way of rebuttal.

Coming to the seventh and last assignment of error to wit, "in refusing to set aside the verdict of the jury and grant the defendant a new trial, because the same was contrary to the law and evidence," we first look to the bill of exceptions, which was made a part of the record at the time of the trial, and find that in the conclusion the court certified, that the foregoing was all the testimony offered in the cause instead of certifying the facts proved. When a certificate of this character is made, this Court has repeatedly held, "that it can not reverse the judgment of the court below for refusal to set aside the verdict as contrary to evidence, unless, by rejecting all the parol evidence for the exceptor, and giving full force and credit to that of the adverse party, the

decision of the court below still appears to be wrong." See *Sanaker* v. *Cushwa, Adm'r,* 3 W. Va. 29; *Sheff* v. *City of Huntington,* 16 W. Va. 308; *Black* v. *Thomas,* 21 W. Va. 709.

Acting upon this well-settled practice, and rejecting the parol evidence offered by the defendant, the question presented for consideration is: Have the plaintiffs shown themselves entitled to recover in said action. It is incumbent on them to show affirmatively, not only what the contract was, but also that they have complied with it. By reference to the bill of exceptions it will be perceived, that they offered in evidence the contract including the specifications thereto attached and which were part thereof; and in that contract they agreed "to build said bridge and abutments in accordance with the plans and specfications thereto attached and at the price therein named;" and it was further agreed "that all of the above-named work should be done in a neat, substantial and workman-like manner, said abutments to be nineteen feet high, set on solid rock base." It seems that Eli Chenowith, one of the contractors, assigned his portion of the contract to one W. H. Thomas, who is one of the plaintiffs in this action. O. S. Fought, one of the contractors, had himself sworn as a witness, and stated, that he built the bridge, just as he understood the contract and specifications, and he states twice, that, when they finished the stone-work, the committee composed of Taylor, Brown, and Gray received it and paid them for it; but he nowhere states, that said abutments were constructed so as to be nineteen feet high; that the work was done in a neat, substantial and workman-like-manner; or that said abutments were set on solid rock base.

It will be seen that the plaintiffs in said suit contracted for said stone-work and wood-work as an entirety and not separately. Their contract was to build the bridge in accordance with the specifications, and, although they were to be paid as the work progressed, the work was not to be received until the bridge was finished. The contract for the stone-work was not a separate contract from the wood-work, and the order of the County Court of Ritchie, dated the 17th of July, 1884, which was given in evidence by said

Fought shows, that said County Court, upon the report of Brown and Taylor, two of said committee, declined to pay the balance of $798.65, which plaintiffs claimed was yet due on said bridge; their report setting forth, that it would probably take said balance to make good certain deficiencies therein mentioned, showing that said committee were clearly of opinion, that plaintiffs had failed to comply with their contract in constructing said bridge.

W. H. Thomas, one of the plaintiffs, was also sworn as a witness, and said, he saw Gray, Fought and E. R. Taylor measuring the abutment; that he bought Chenowith's interest in the bridge, and completed the wood-work according to the contract; that the committee saw it, and made no objection to it; that Brown, one of the committee, said it was a very good job, if they would tighten up some of the bolts and washers; that Taylor told the court, it was a good job of work, and ought to be protected; that he (witness) requested the court to make an order for shingles to cover the bridge, or finish covering it, which the court declined to do, and he afterwards bought shingles himself to finish covering it, and then sent for the committee to come and receive it, and after they came he told them if they had any suggestions to make about anything he was ready to do it, and they made no suggestions about anything but the bolts, and he went home and paid no more attention to it; that he became a contractor after the stone-work was completed, *etc.* It will be seen, that his testimony has reference mainly to the woodwork. He further says that E. J. Taylor said to him, when he was beginning the bridge, (evidently meaning the woodwork,) "Hadn't you better wait until we investigate this thing a little?" (meaning the abutment); that that was all the notice he ever had; that he saw some places in the abutment under the ground, which might have been better; that the committee called him to see the abutment about the time they were beginning to raise the bridge; that he jobbed a crowbar down, and felt something'—a log or a rock; that he at last became alarmed at the reports about the deficiencies in the abutment, and went to E. J. Taylor and told him about these reports that were being circulated, and that Taylor said they were all lies started by old Chenowith and Granville

Cotrill, and that nobody would believe them on oath, and for witness to go back and finish the work, learn all he could about bridge-building, and that he (Taylor) and witness would take the job of building another bridge across South Fork; that neither Taylor nor Chenowith told him the abut-ment was defective; that there were no cracks in the face of the abutment; that some of the joints did not fit up; that he could slip his fingers in where the mortar had fallen out; that he saw solid rock under the abutment three feet; that he saw Mr. Porter digging a hole under the abutment; that he and Mr. Britton leveled from the rock in the bed of the river, and it was only three inches lower than the bottom of the abutment; that he does not know whether the abutment is in solid base rock or not; that he would not state any-thing more about it; that it could not stand there in the con-dition it is in, if it were not on the solid rock base; too much weight there.

A. B. Wilson, a witness called by plaintiff, stated, that he was employed by the County Court to build an approach to said bridge in the fall of 1884, and received $240.00 for it in orders, which he filed with his deposition, that he was em-ployed by Mr. Barnard, president of the County Court, and J. M. Wilson, to make the approach, and he believes he saw two men ride over it,—a Mr. Taylor and Mr. Wilson.

This was all the evidence offered by the plaintiffs in chief. They (the plaintiffs) called several witnesses by way of rebuttal buttal, one of whom, an expert by the name of Jacob Hibbs, stated on cross-examination, that he did not consider the work done in a workman-like manner; that ten or twelve feet of the wing-wall fell down; that it would be hard for him to tell, whether it would have fallen anyhow, or the excavation caused it to fall, etc. He had before stated that he had been a stone-mason for forty five years, etc.

This is the case presented by the plaintiff's evidence, and, excluding all evidence offered by the defendant, whether con-tradicted or not, it does not seem to me, that it would entitle the plaintiffs to the verdict rendered. It nowhere appears, that the abutment was built upon a solid rock foundation as the contract requires. On the contrary, the plaintiff Thomas says, he does not know whether the abutment is on solid base

rock or not. He saw Mr. Porter digging a hole under the abutment, which he could not have done if it stood upon a solid rock foundation; and Mr. Hibbs states, that it was a rough job and not done in a workman-like manner; and the orders of the County Court offered in evidence by the plaintiffs show clearly, that the committee's report was adverse to the reception of the bridge, and for that reason the court declined to pay for the same. Without, then, invading the province of the jury in weighing the testimony *pro* and *con*, but considering only the evidence offered by the plaintiffs in connection with the errors we have hereinbefore indicated in the rulings of the court, I am of opinion, that the judgment of the court must be reversed, a new trial awarded. The cause is remanded to the Circuit Court of Doddridge county for that purpose, and the plaintiff in error must recover the costs of this writ of error.

REVERSED. REMANDED.