# CHARLESTON.

## JOHNSON *v.* BURNS *et al.*

Submitted June 21, 1894.—Decided December 15, 1894.

1. LOGS—EVIDENCE—MEASUREMENT.

A written contract shows, that logs are purchased at a given price per cubic foot, no mode of measurement being specified by it. Evidence is admissible to prove a contemporaneous oral agreement, that a certain mode of measurement shall be applied.

2. LOGS—MEASUREMENT.

Where such contract does not provide a mode of measurement,

and there is no such special agreement to apply a particular mode of measurement, and such logs are purchased with the knowledge on the part of the seller, that they are to be manufactured into sawed lumber, in ascertaining the cubical contents of the logs Scribner's rule, designated "cubic measurement," reducing the logs to square measure is the rule applicable.

3. CONTRACT—CUSTOM—USAGE.

Where a contract does not provide in a given particular, particular local custom may be proven for its interpretation, so it be brought home to the knowledge of the person to be affected by it, and so it do not violate fixed statute or common law.

4. LOGS—MEASUREMENT—CUSTOM—USAGE.

In measurement of logs, lumber, and timber, where there is no contract provision as to mode of measurement, Scribner's rule applies under section 17a, c. 59, Code 1891, and custom and usage have no application.

5. NEW TRIAL—EVIDENCE.

Under section 9, c. 131 (Ed. 1891) of the Code when exception is taken to the action or opinion of the court upon a question involving evidence upon a motion for a new trial or otherwise, all the evidence, whether conflicting or not, must be certified, and this Court must consider all such evidence on both sides, though conflicting, not rejecting any. If upon such evidence the finding of the jury plainly appears to be contrary to the evidence or without sufficient evidence or plainly against the decided and clear preponderance of evidence, it ought to be set aside, even though the evidence be conflicting.

6. NEW TRIAL—EVIDENCE.

While a verdict may under the circumstances just stated be set aside, though the evidence conflict, yet the power to do so should be cautiously exercised.

7. EVIDENCE—DISCRETION—REVERSAL.

Whether a party shall introduce further evidence, after that of the adverse party has been heard, is a matter within the discretion of the court, and its exercise will rarely, if ever, be the cause of reversal in an appellate court. Clearly he is entitled to introduce evidence to rebut that of the other party.

W. E. HAYMOND for plaintiffs in error.

D. STRADER and A. W. CORLEY for defendant in error.

BRANNON, PRESIDENT :

This is a writ of error taken by Burns Bros. & Hoffman to a judgment of the Circuit Court of Webster county, rendered in an action by John N. Johnson against them.

The action was for the recovery of the price of timber sold Burns Bros. & Hoffman by Johnson by written contracts, to be paid for at so much per cubic foot, and controversy arises out of a difference as to the mode of measurement, Johnson contending that the logs must be measured solid, excluding nothing to square them, while Burns Bros. & Hoffman contend that the logs must be brought to the square. The contract being silent as to the guide or rule of measurement, under section 17a, c. 59, Code, 1891, Scribner's rule must apply. Neither side denies this. But Scribner's rules contain two modes of measurement—one for ascertaining the solid, cubical contents of spars or other round timber, the other for ascertaining cubical contents after bringing logs to the square. The question is, which of those rules shall be used in the case, round or square measure ?

First Question. The plaintiff gave in evidence the written contract, and the rule of measurement, claimed by him as applicable, found on page 64 of Scribner's book for ascertaining solid cubical contents of round timber, and gave evidence of the number and contents of the logs he furnished; and then, on cross-examination of G. M. Burns, a witness for defence, and one of the defendants, counsel for plaintiff asked him if he agreed with plaintiff, at the time of making the written contract, that the timber should be measured giving the solid contents, no statement having been made by Burns or any witness for defendants touching any mode of measurement, to which question the defence objected, but the court overruled the objection, and the witness answered that there was no agreement as to the mode of measurement at the time of the execution of the written contract, but that he had previously explained to Johnson the rule under which his firm ascertained the cubical contents of logs—that is, the rule on page 58 of Scribner's book. After the defendant rested, plaintiff, in rebuttal, as a witness for himself, stated, against objection by defendants, that at the time of the execution of the contract there was an agreement as to the mode of measurement, and that Burns agreed with him that he should have round measure, and the solid contents of the timber sold. It is urged that

the court committed error in compelling Burns to answer the question whether he had such agreement with plaintiff as to mode of measurement, and in allowing plaintiff to prove such agreement in two respects: First, that it allowed oral evidence to vary a written agreement; and, secondly, that it was in rebuttal of defendant's evidence and too late.

1. Was evidence of the oral agreement admissible? The cases are innumerable on the subject of when oral evidence does or does not vary or contradict writings, and the lines of distinction often so nice that best minds are taxed and become confused in seeing them; and it would be useless to attempt an elaboration of a subject which has been discussed through centuries in decisions and books found everywhere. All admit that oral evidence can not be admitted to vary or contradict a writing. As stated in 1 Greenl. Ev. § 275 : "Parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." This Court, in *Lockwood* v. *Holladay*, 16 W. Va. 651, held that "parol evidence, in the absence of fraud or mistake, will not be received to ingraft upon or incorporate with a valid written contract an incident occurring contemporaneously therewith, and inconsistent with its terms." This is in words a section of the syllabus in the well-considered case of *Towner* v. *Lucas*, 13 Gratt. 705. In *Crawford* v. *Jarrett*, 2 Leigh, 630, Judge GREEN, said : "Parol evidence can not be admitted (unless in case of fraud or mistake) to vary, contradict, add to or explain the terms of the written agreement by proving that the agreement of parties was different from what it appears by the writing to have been." I think this is a correct and apt statement. These authorities I select as apt for application to this case.

Does the evidence of an agreement to pay by a measure giving solid cubical contents vary or contradict the terms of the contract, or add anything to or explain them by showing something in conflict with its terms? I think not. That contract says that so much per cubic foot is to be paid, but is silent as to the mode of measurement by which the number of cubic feet shall be ascertained. Scribner's book

is applied by the law as the rule of measurement, but we find that it gives two modes of measurement for ascertainment of cubical contents—one ascertaining the solid contents of spars or other round timber, the other the contents after bringing the logs to a square. Now, certainly the parties could apply either by incorporating it in the contract. They did not do so. Then which shall apply? Is it possible that an oral agreement that one of them shall be used can not be shown? It does not contradict or vary the writing, for that contains in its terms not a syllable on the point. It affords explanation by showing the intention of the parties, but does not vary or contradict the writing. Oral evidence is admissible to apply the instrument to the subject-matter, to enable us to execute it. 1 Greenl. Ev. §§ 286, 288. Where a description in a deed or other document is applicable to two or more objects, parol evidence is admissible to distinguish between the objects, as well as to identify that intended by the parties. 2 Whart. Ev. § 944.

The argument against the view just given would be, in effect, that in every case of such a contract, silent as to measurement, Scribner's rule is the law of the contract, and square measure the rule; and any oral evidence applying a different rule makes the contract have a different legal effect from that which its face imports in law, and therefore varies and contradicts it; adds to it something that varies its operation. Just here is the crucial point. It does not do so because the contract does not in itself call for the one, rather than the other, of Scribner's two modes of measurement. Both are applicable to round timber, and we can not say, looking only at the contract, which it calls for. If it contained anything calling for the one method over the other, that would exclude oral evidence. If it had declared that the timber was to be sawed into lumber, I think this special oral contract evidence would not be admissible, because I think that the language of Scribner in connection with these two modes of measurement of round timber clearly shows that the one is applicable to timber sold for manufacture into lumber, while the other is for ascertainment of solid contents for tollage, or

when the timber is to be used as spars or simply as round timber. We must construe Scribner as it is incorporated into statute. This writing contains no earmark of the intended use of the timber guiding us in the selection from Scribner of the mode of measurement, unless we say that, as it sells poplar timber, that is such earmark ; but that would require us to take judicial notice of the fact as a fact that poplar is used only for conversion into sawed lumber, and such is not always the fact, though generally so, and we can not carry the doctrine of judicial notice so far. We think oral evidence of special agreement to use a certain mode of measurement admissible, and find no error in the court's so ruling.

2. Was it too late to offer it in rebuttal ? It was not offered until . after the defendant had given evidence to show a custom there prevailing to apply the other, or square, measure. The plaintiff gave in evidence the mode of measuring round timber given on page 64 of Scribner, intending to rely on it. Then the defendant introduced to repel this a custom to show that the square measure was applicable. Why could not the plaintiff meet this custom evidence by showing an agreement to apply another mode ? I think the evidence would have been admissible in connection with the writing in chief, and certainly, therefore, in rebuttal. Even if it ought to have been introduced in chief, we would not reverse for the departure from order, as the object is a fair trial, and the order of evidence is within the discretion of the trial court, and is rarely the ground of reversal. *Bowyer* v. *Knapp*, 15 W. Va. 277, point 7 ; *Clark* v. *R'd Co. infra.* (20 S. E. Rep. 696).

Second Question. Instructions. The court refused certain instructions asked by defendants.

" Defendants' instruction No. 1. The court instructs the jury that in the ascertainment of the contents of the logs and timber involved in this suit it must be by Scribner's rule, ' cubic measurement,' ' round timber reduced to square timber.' " This instruction ignores all evidence tending to prove an oral contract to apply the round timber measurement, and tied the jury to square measurement; and, according to what has been

above said, and all the evidence being before the jury was properly refused.

"Defendants' instruction No. 2. The court instructs the jury that if they believe from the evidence that there was no special contract between the parties as to the mode of measuring and ascertaining the cubic feet in the timber sold by plaintiff to the defendants, then, in the ascertainment of the contents of the logs and timber involved in this suit, it must be by Scribner's rule, 'cubic measurement,' 'round timber reduced to square timber.'"

Around this instruction center principles important in the solution of the case, and on it I have had considerable perplexity of mind. Suppose there was no agreement to apply either one of the modes of measurement, what measurement should be applied—which one of Scribner's modes? The statute makes his rules applicable. They are the law of the case. We pick out a particular section of the Code or any law-book, and apply it to a certain case, because it is the law applicable to the facts; and so, as Scribner's rule is law, we apply that portion of his book—that process of measurement—applicable to the particular facts of a particular transaction. But the trouble is to say which section of the law book fits the case, just as in this case the trouble is to say which measurement of the two given by Scribner fits this case. On the one hand, Johnson says that he sold timber to be cut and delivered by him in logs, round timber, at so much per cubic foot, and it must be paid for by solid contents, no matter to what use the buyers intended to apply it; while, on the other hand, Burns Bros. & Hoffman say they purchased the timber, not to be used as spars or as round timber, but to be sawed into lumber, as Johnson knew, and paid for it a price reasonable and fair on the basis of square measure but too high, and which they could not pay on the basis of round measure. Now, which shall we say was impliedly or presumably the intent of the parties? It is material to say that both of Scribner's methods or rules for measurement apply to round timber, but the one gives the solid contents, the other the square contents, making deductions to reach the square of the log for waste, which the other would include.

Which party should have inserted in the contract the particular mode he had in mind, if he had one in mind— the seller or purchaser? When Burns Bros. & Hoffman bought for lumber purposes, is it fair to suppose they intended, or that Johnson intended, they should pay for slabs necessarily wasted in the manufacture of the logs into lumber, paying a full price for timber to be brought to square, and a price which would be unreasonably high if measured solidly? We think not. We conclude that, if there was no special contract, the rule of Scribner's book (page 58) "cubic measurement," "round timber reduced to square measure," governed.

It is claimed that any harm done the defendants by the refusal of this instruction was cured by an instruction given as follows in lieu of those asked by defendants:

"Defendants' instruction No. 5. The court instructs the jury that if they believe from the evidence that the custom among buyers and sellers of round logs on the Little Kanawha river and its tributaries by cubic feet is to measure and ascertain cubic contents of logs by making the proper deduction to square the log, and that plaintiff had knowledge of that custom, and the contract between plaintiff and defendants is that stated in the writing dated 19th October, 1887, signed by them and sealed, in evidence, and that there was no contract between them as to the mode of measurement, then the rule laid down by Scribner for 'cubic measurement,' 'round timber reduced to square timber,' must be used in the ascertainment of cubic contents of logs in question in this action; and, if the jury further believe from the evidence that the plaintiff has been paid the whole sum to which the logs and timber furnished by him to defendants amounts by that rule, then the jury must find for the defendants."

We do not think it cures the refusal of No. 2, because under No. 5 it requires the existence of a custom applying square measure, and knowledge of it by the plaintiff, and the nonexistence of an agreement to apply solid measure before the square measure could apply; whereas we hold that if there was no agreement to apply solid measure, then no custom was relevant, as the square measure would apply

under the statute. This instruction is thus erroneous. Suppose no agreement and no custom proven as known to plaintiff, what rule then ? It does not say. No instruction told the jury that in such case Scribner's square measure rule applied, though No. 2 asked it.

"Defendants' instruction No. 3. The court instructs the jury that Scribner's rule for measurement of timber is the rule which must be applied in this case ; that such measurement must be by the rule of Scribner for cubic measurement customarily used among buyers and sellers of round logs on the Little Kanawha river and its tributaries ; and, if plaintiff has received from defendants, by amounts paid before suit brought and amount paid with plea of tender in this case, all the timber branded by plaintiff amounted to by that rule, then the jury must find for the defendant." This was properly refused, because it would tell the jury to disregard all evidence touching a special agreement to apply the round timber measurement, and makes the custom of applying the square measurement all controlling and overriding any special agreement. It also omits all elements of knowledge of such custom by the plaintiff.

"Defendants' instruction No. 4. The court instructs the jury that if they believe from the evidence that the custom among buyers and sellers of round logs in the Little Kanawha river and its tributaries by cubic feet is to measure and ascertain cubic contents of logs by making the proper reduction to square the log, and that plaintiff had knowledge of that custom, then the rule laid down by Scribner for 'cubic measurement,' 'round reduced to square timber,' must be used in the ascertainment of cubic contents of logs in question in this action ; and, if the jury further believes from the evidence that the plaintiff has been paid the whole sum to which the logs and timber furnished by him to defendants amounted by that rule, then the jury must find for the defendants." This is objectionable, since it ignores any special contract, and makes custom absolutely dominant over such special contract. If there was no special contract as to measure, Scribner' square measure would govern, not by custom, but by the imperative force of statute.

The court gave, at plaintiff's request, the three following instructions.

"Plaintiff's instruction No. 1.    The jury are instructed that if they believe from the evidence that the plaintiff and the defendants agreed upon a rule of measurement by which the contents of the timber in the contract was to be ascertained, they should adopt that rule in ascertaining the amount of cubic feet sold to defendants.

"Plaintiff's instruction No. 2.    The jury are instructed that if they believe from the evidence that the plaintiff and defendants, at the time of the sale of the timber specified in the contracts offered in evidence to the jury, agreed that in the measurement of said timber the solid contents thereof should be estimated without reducing the logs to a square, then the rule given by Scribner, commencing on page 64 of this book, would be applicable in estimating the quantity of the timber sold.

"Plaintiff's instruction No. 3.    The jury is instructed that if the defendants rely upon a custom to ascertain what mode should be adopted in ascertaining the quantity of timber sold by the plaintiff to the defendants, the burden of proof is upon the defendants to establish the same, and to show that the plaintiff had knowledge of said custom at the times of the sale of the lumber mentioned in the contracts in writing between the plaintiff and defendants."

As to the first two, I refer to what is said above as to the admissibility of evidence of special agreement.    It was competent to make it, and, if so, then to prove it ;   and, if made in fact, it governed.

As to the third instruction, if there was no special agreement as to the mode of measurement, then the statute (Code 1891, c. 59, s. 17a) furnished the mode of measurement as it declares that Scribner's rule for measurement of logs, lumber and timber of all kinds is established as the lawful rule for their measurement unless some other rule be agreed to.    Therefore, custom is irrelevant, as, if there is an agreement, that makes the rule, and, if there is not, Scribner makes the rule.    There is no place for custom.    Frequently, where contracts do not provide, local usage can be

called upon as interpretative of the contract, if known to the parties, as it is presumed they contracted with the usage in mind; and he who asserts it must prove it, and show that it was known to the party to be affected by it. But it can not apply in opposition to fixed common or statute law. The defendants introduced this evidence of custom, and, while we think it irrelevant, as it harmonized with the Scribner square measure rule, it is not important, and defendants can not complain of the instruction. Whart. Ev. §§ 962, 965; *Foye* v. *Leighton*, 53. Am. Dec. 231; *Cotton Press Co.* v. *Stanard*, 100 Am. Dec. 255.

Third Question. Did the court err in refusing, on the evidence, to set aside the verdict and grant a new trial? It is clear that as the law was up to the enactment of chapter 100, Acts 1891 (Code 1891, c. 131, s. 9) we could not set aside the verdict, for the reason that, as the law was prior to that act, where this Court was asked to review the action of a Circuit Court overruling a motion to set aside a verdict on the ground of its being unwarranted by the evidence, the facts, and not the evidence, ought to be certified by the Circuit Court where practicable; and where the evidence, and not facts, was certified, this Court must reject all the conflicting oral evidence introduced by the exceptor, and give full faith and credit to that of the adverse party, and could not set aside the verdict, unless, after so doing, the verdict was manifestly against the evidence, or without sufficient evidence. *Black* v. *Thomas*, 21 W. Va. 709; *Baker's Case*, 33 W. Va. 320, and note page 373 (10 S. E. Rep. 629).

The statute cited above provides that in a trial at law the party may except to any action or opinion of the court, and tender a bill of exceptions, "and, if the action or opinion of the court be upon any question involving the evidence, or any part thereof, either upon a motion for a new trial or otherwise, the court shall certify all the evidence touching such question, and the judge shall sign any such bill of exceptions (if the truth of the case be fairly stated therein) and it shall be made a part of the record in the case, and the whole of the evidence so certified shall be considered by the Court of Appeals, both upon the appli-

cation for and hearing of the writ of error or *supersedeas*."

This works change. The legislature knew of the old rule as above stated as held so long and by so many decisions, and by this sweeping, comprehensive language intended change. The act works two changes. One is that all the evidence, not the facts, must be certified; and the other is that all the evidence, though it be conflicting, on both sides, shall be considered in this Court. What else does the act mean? It does not simply require that all the evidence shall be certified, but commands this Court to consider it all. We did not do so before. I think the act goes no further than to bring to this Court all the evidence, and require us to consider all. It does not say how we shall consider it, or what weight we shall give it, or what decision render upon it, as that is a judicial function vested by the constitution in the Court, with which the legislature could not interfere and has not interfered.

The act, I repeat, made no further change than as above indicated. How, as a matter of practical effect, it may detract from the prerogative of a jury to judge of the truthfulness of witnesses, can not be said. It may be that witnesses who, being seen face to face by jurors, and whose evidence was considered by them perjured, or for other cause worthless, will be accorded faith and weight in this Court. The evidence, all of it, being thus before the court, we do but apply the old rule, often expressed, but in different ways; that is, that we must accord to the jury the function of judging of the credibility of evidence, and of drawing inferences and deductions therefrom, and we can not set aside a verdict approved by the trial-court, unless on the whole evidence it be plainly contrary to the evidence, or plainly without evidence to sustain it, unless it manifestly appears, that there is a clear and decided preponderance against the finding of the jury. Where the evidence on material points is conflicting, we must still remember the well-established rule that it is rarely the case that a court can set aside a verdict, because amid the conflict of oral evidence the jury is the judge of credibility of witnesses; while at the same time we must not say that without exception a court can not interfere with a verdict where there

is conflict of evidence, for it has been often held that a new trial may be granted, though the evidence be conflicting, if the verdict be against the decided weight of evidence, though the power should be cautiously exercised. *Grogan* v. *Railroad Co.*, 39 W. Va. 415 (19 S. E. Rep. 263) and citations; *Martin* v. *Thayer*, 37 W. Va. 38 (16 S. E. Rep. 489).

Let us now apply these principles to this case by considering all the evidence upon that material and controlling question whether there was or was not a special contract by which the measurement was to be solid contents by round timber measure, not reducing the logs to square; for, if there was such contract, the verdict, resting on that theory, is right, whereas, if there was not, the verdict is wrong. The plaintiff, as a witness, stated that Laughary, agent of Burns Bros. & Hoffman, made the bargain with him, and told him he should have round measure, nothing to be thrown off to square the log; that G. M. Burns came to him later, and drew up the written contract, and, when read over, plaintiff said it did not read just right about the measurement, and that Burns then said that that meant the measurement of all in the log, and in buying standing timber by the cube, it always meant that; that trees growing, if you take timber out of its natural growth, you must so state; that he (plaintiff) told Burns that Laughary had agreed that he should have round measure, and Burns said, "Yes, he told me so."

On the other side, Laughary testified that he explained the custom for ascertaining the cubical contents as claimed by defendants to the plaintiff before the contract, which plaintiff denied, and had not told Johnson he should have solid contents measurement.

Powell testified that he explained to the plaintiff before the closing of the contract the said rule of cubic measurement as laid down by Scribner on page 58 of his book, and more than once talked to him about the custom in regard to it; that he was once with Burns, before the contract was made, when both Burns and he explained to Johnson the rule claimed by defendants.

Burns testified that he had not given Johnson to understand that the timber should be measured solid contents,

never agreed with nor intimated such a thing to him, but, to the contrary, had clearly informed him that it would be cubed, throwing off sufficient to square the log; that such was the universal practice of his company and lumber dealers; that the measurement was taken by Laughary, and the logs cubed up by said square measure rule, and Johnson knew of it, and knew the amount entered in the books of the company, and made no complaint until the last of the timber was to be measured.

Several witnesses testified that the custom of the country was to measure logs for lumber purposes by reducing to the square. There was no evidence to deny the custom.

Thus only the plaintiff testified to this special contract, while Burns denied it, and two disinterested witnesses denied it. Now, add to this the facts that the timber was thirty-inch poplar, used only for lumber, and was purchased to be made into lumber, and not for spars and other round timber uses, as plaintiff knew; that the price paid was fair and reasonable for timber measured under Scribner's square measure rule and could not be paid for timber measured solid; and that round timber was only used for spars and piling, not lumber—facts undisputed, which in themselves alone inspire an inherent improbability, that there was a special contract to pay on the basis of solid measure. Then reflect that the jury overruled the evidence of three witnesses, two of them disinterested, and the weight of the facts above stated carrying an intrinsic weight of probability, and if this Court performs any function on the evidence, we must say, the verdict is against the decided weight and preponderance of the evidence. Were the matter to be solved on the evidence of the witnesses alone, though the preponderance seems to be with the defence, yet the state of the case would be different; but those undisputed facts come in with telling weight to corroborate the version given by the defendants' witnesses.

I have thus, unnecessarily as I think, given the evidence, and we conclude the verdict is plainly against the clear and decided preponderance of evidence, and we reverse the judgment, set the verdict aside, award a new trial and remand the case.