# CHARLESTON.

## CONNOLLY *et al. v.* BRUNER.

### Decided April 14, 1900.

1. ASSUMPSIT—*Estopple—Non-Suit—Judgment.*

C. & J. sue B. in *assumpsit.* B pleads general issue. Jury impaneled April 15, 1895. Plaintiff fails to appear, court enters non-suit and judgment for five dollars damages and costs. Plaintiffs at once move to set aside non-suit, and ask leave to file amended declaration, which motion is entered of record. Plaintiffs, on June 29, 1895, sue out writ on amended declaration, and file amended declaration at August rules. On February 14, 1896, plaintiffs sue out another writ, and at March rules, 1896, filed their second amended declaration, and on April 17, 1896, defendant appeared and demurred, and pleaded *non assumpsit* to said two amended declarations. A jury was impaneled, the issue tried, and verdict and judgment for plaintiffs. Held, that under Code, chapter 134, section 3, defendant, not having taken advantage of the non-suit below, is estopped,

after trial, verdict and judgment, from raising the question in this Court. (p. 85).

2. CONTRACT—*Construction—Usage—Custom.*

A general and well-established custom or usage, or one actually known to the parties, constitutes the common understanding of parties, and ought to be resorted to as an interpreter of the contract. (p. 88).

3. EVIDENCE—*Custom—Usage—Issue.*

Evidence of such custom or usage is admissible on the principle of ascertaining and carrying into effect the intention of the parties, and thus doing justice between them, and such evidence may be admitted under the general issue. (p. 88).

Error to Circuit Court, Tyler County.

Action by James Connolly and others against Andrew Bruner. Judgment for plaintiffs, and defendant brings error.

*Reversed.*

ROBT. MCELDOWNEY, BASIL T. BOWERS, and ERSKINE & ALLISON, for plaintiff in error.

S. BRUCE HALL, for defendants in error.

MCWHORTER, JUDGE:

This is an action of trespass on the case in *assumpsit* brought on the 8th day of December, 1893, in the circuit court of Tyler County, by James Connolly, Peter A. Connolly, D. F. Connolly, H. J. Connolly, William H. Johnson, Walter H. Johnson, E. T. Johnson, C. M. Farrer, and John Trefts, partners as Connolly & Johnson, against Andrew Bruner, in which plaintiffs filed their declaration at the January rules, 1894, containing only the common counts, and laying their damages at one thousand five hundred dollars. At February rules defendant appeared, and demurred generally to plaintiff's declaration. On the 13th of April plaintiffs, by leave of the court, filed their account or bill of particulars with their declaration; when the defendant, by leave of the court, withdrew his demurrer, and entered his plea of *non assumpsit.* On the 15th day of April, 1895, plaintiffs replied generally to the said plea of *non assumpsit,* and a jury was impaneled and sworn to try the issue, and, the plaintiffs failing to appear and prosecute their suit, a non-suit was ordered, and judgment rendered for defendant for five dollars damages and costs; and

thereupon the plaintiffs moved·the court to set aside the said judgment of nonsuit, and grant them leave to file an amended declaration in the cause, which motion was entered of record. On the 29th of June, 1895, plaintiffs sued out of the clerk's office a writ against the defendant, returnable to July rules, on a plea of *assumpsit* on amended declaration; and at August rules they filed their amended declaration; and at October rules, 1895, they filed in the papers of the cause an account of their claim; and on the 14th of February, 1896, they sued out another writ in *assumpsit* against the said defendant, upon an amended declaration returnable to March rules, 1896, at which rules they filed their second amended declaration; and on the 17th of April, 1896, the defendant appeared in court by his attorney, and demurred to the first amended declaration and each count thereof, and also to the second amended declaration and each count thereof, in which demurrers the plaintiffs joined, and, the same being argued, the court sustained the demurrer as to the special count in the first amended declaration, and overruled it as to the common counts, and sustained the demurrer as to the second and third special counts of said second amended declaration, and overruled the demurrer as to the first, fourth, and fifth special counts and the common counts of the said second amended declaration, and the defendant pleaded *non assumpsit*. A jury was impaneled, and on the 18th day of August, 1896, found the issue for the plaintiffs, and assessed their damages at one thousand two hundred and fifty dollars. Defendant moved to set aside the verdict of the jury, and grant him a new trial, upon the ground that the verdict was contrary to the law and the evidence, of which the court took time to consider; and on the 16th day of December, 1896, the court overruled the motion, and rendered judgment on said verdict; to which rulings of the court the defendant excepted, and on the 29th day of December the judge signed sixteen several bills of exceptions, numbered one to sixteen, inclusive, which were made part of the record in the case, and to which judgment of the court the defendant applied to and obtained from this Court a writ of error and *supersedeas*.

This action is based upon a·verbal or oral contract between the parties, whereby the plaintiffs undertook to drill for the defendant an oil well, which contract is set out in the first, fourth, and fifth special counts of the second amended declaration, and which counts are in the following words:

"For this, to-wit, that before and at the time of the contract and agreement hereinafter mentioned and set forth the plaintiffs were engaged in the work and business of oil drillers and contractors, and in boring and drilling oil wells, in what is known as the 'Sistersville Oil Field,' in Tyler County, State of West Virginia; and the said defendant was the owner or claimed to own an oil and gas lease on the farm of William Laugherty, situate in Lincoln district, Tyler County, West Virginia; and the said defendant, being such owner of said oil and gas lease, heretofore, to-wit, on the 10th day of April, 1893, at the county of Tyler and State of West Virginia, by a certain verbal or oral agreement then and there made between the said plaintiffs and the said defendant, said plaintiffs agreed to drill, bore, and sink an oil well the usual and customary diameter, on the leasehold above mentioned and described, on the farm of said William Laugherty, in said county and State, and in performing said work agreed to furnish their own drilling and boring tools; and the said plaintiffs agreed to drill the same to the oil-bearing sand in said 'Sistersville Oil Field,' at and for the price of eighty cents per foot for every foot in depth said well was sunk and bored in the earth; and said plaintiffs were to commence said boring and drilling as soon as possible or convenient, after entering into said contract with said defendant, and they agreed and promised to complete the same within a reasonable time; and it was further agreed between the said plaintiffs and the said defendant that the said defendant should furnish and supply and have erected for the said plaintiffs, at the point on the said Laugherty lease, where the defendant desired said oil well drilled, a first-class oil-well rig and oil-well derrick; and said defendant further agreed and promised to furnish the necessary fuel, water, and casing whenever needed by plaintiff in drilling, boring, and sinking said oil well; and the said agreement being so made afterwards, to-wit, on the said April 10, 1893, aforesaid, at the said county of Tyler and State of West Virginia, aforesaid, in consideration thereof; and that the said plaintiffs, at the special instance and request of the said defendant, had then and there undertaken and faithfully promised the said defendant to perform and fulfill the said agreement and promise in all things on the said plaintiffs' part in behalf to be performed and fulfilled; the said defendant undertook, and then and their faithfully promised said plaintiffs to perform and fulfill said agreement and promise

in all things on the said defendant's part to be performed and
fulfilled, and to furnish the said plaintiffs, when required by
them, a first-class oil-well rig and derrick, and to furnish said
plaintiffs all fuel, water, and oil-well casing, whenever needed
by said plaintiffs in drilling, boring, and sinking and complet-
ing said oil well; and said defendant promised and agreed to
pay to said plaintiffs, for the drilling, boring, and sinking of
said well, the sum and price of eighty cents per foot for each
and every foot deep said plaintiffs drilled, bored, and sunk said
oil well. The said plaintiffs, confiding in the said promise, un-
dertaking, and agreement of said defendant, did afterwards, to-
wit, as soon as possible and convenient after said 10th day of
April, 1893, haul and move their drilling tools to the said lease-
hold estate, so belonging to said defendant, on said Laugherty
farm, ready to drill, bore, and sink said oil well, according to
their said promise and agreement; and the said defendant
furnished and had erected an oil-well derrick and oil-well rig
at the point and location on the said leasehold where the said
defendant desired said plaintiffs to sink, bore, and drill said oil
well; but plaintiffs say that the same was not a first-class rig
and derrick, as defendant had promised and agreed to furnish
said plaintiffs, and the same was defective, was made of unsound
timber, and was not of sufficient strength to drill, bore, and sink
said oil well to the said oil-bearing sand, though plaintiffs were
not aware of said defects when they commenced the drilling of
said well, and did not learn of said defects until they had said
well partially drilled, sunk, and bored. Plaintiffs commenced the
drilling, boring, and sinking of said oil well at the point desig-
nated on said leasehold by said defendant, and with the defec-
tive oil-well derrick and rig so furnished by said defendant for
said plaintiffs with which to drill said well; said plaintiffs
drilled, bored, and sunk said oil well a few hundred feet, when
they discovered that said oil-well rig and oil-well derrick was
not built in a first-class and workmanlike manner, and that it
was built of unsound timber. Plaintiffs at once notified the
defendant that the said rig was defective, and plaintiffs asked
the defendant to furnish them with a good and sufficient rig
with which to drill said well. The defendant sent, or caused
to be sent, a man to repair said rig. Plaintiffs then proceeded
again with the drilling and boring of said oil well, and had
no more serious trouble with said rig and derrick, until

they had drilled and bored said hole or oil well to a depth of eight hundred and fifty feet. When they had drilled, bored, and sunk said hole or oil well to the said depth of eight hundred and fifty feet, the walking beam attached to said rig and derrick, and which is a portion and part of said derrick and rig, fell down from its proper position and place in said rig into the said derrick, causing the work on said well to be greatly delayed. Said walking beam fell because the said derrick and said rig was not a first class rig, and because the said derrick and rig was materially defective in both material and workmanship. Plaintiffs at once notified said defendant of said accident, and told him that said walking beam had fallen into the derrick. Before the rig and derrick could be repaired, the earth and dirt around the sides of said hole caved into said hole, and filled the same up, and thus destroyed the said hole as an oil well, when plaintiffs were thus compelled, through no fault whatever nor neglect of theirs, to abandon the same, and, in the parlance of the oil field, were compelled to 'plug' the said hole and the said well and hole, and the value thereof was entirely lost to plaintiffs. Plaintiffs aver that they had done and performed said work in a proper and workmanlike manner, until said walking beam fell from its place, and down into said derrick and rig, and they performed the same in a good and workmanlike manner, according to their said promise and agreement. Plaintiffs say that the said rig and derrick so furnished by said defendant was not built and erected according to the agreement; that it was materially defective, both in workmanship and material, and because of such defects said walking beam fell into said derrick and rig, and because the said walking beam fell into said derrick and rig the said plaintiffs were unable to proceed further with the drilling of said hole or oil well, and, because said plaintiffs could not proceed further with said work of drilling and boring of said well, the earth and dirt around the sides of said hole caved in, and filled the same up, thereby making the same worthless and valueless to said plaintiffs and everyone else; yet the said plaintiffs in fact say that the said defendant, contriving and wrongfully intending to injure the said plaintiffs, did not nor would perform the said agreement, nor his said promise and undertaking, but thereby craftily and subtly deceived the said plaintiffs, in this: That the said defendant did not nor would furnish the said plaintiffs

the oil-well rig and derrick which he, the said defendant, so agreed and promised to do, but, on the contrary thereof, hath hitherto wholly neglected and refused so to do, at the county and State aforesaid, whereby the said plaintiffs have lost and been deprived of the profits and advantages which they otherwise might and would have derived from the completion of the said hole and oil well, to-wit, at the county and State aforesaid, and whereby plaintiffs aver that they have sustained damages to the amount of one thousand five hundred dollars."

"(4) And for another count of this declaration, and for another cause of action herein and hereunder, plaintiffs further complain and aver that afterwards, to-wit, on the day and year aforesaid, the said defendant was engaged in the oil-producing business, and was an oil producer, and was engaged in boring and having holes bored into the earth for the purpose of ascertaining whether or not oil could be found thereunder, and was at the date of the contract and agreement hereinbefore and hereinafter set forth engaged in such business, work, and, occupation in the 'Sistersville Oil Field,' in Tyler County and State of West Virginia; and plaintiffs say that the said defendant was, before and at the date of the contract and agreement hereinbefore and hereinafter mentioned, described, and set forth, the owner of a certain oil and gas lease upon what was and is now known as the 'Laugherty Farm,' which farm is situate in Lincoln District in Tyler County, State of West Virginia, within the said 'Sistersville Oil Field'; and plaintiffs, by way of further inducement and preamble to this count, say and aver that, at and before and after the date of the contract and agreement hereinbefore and hereinafter mentioned, described, and set forth, they, the said plaintiffs, were engaged in the work, occupation, and business of boring and drilling and sinking holes into the earth and ground, both for themselves and for others, for hire, with the object and for the purpose of learning and ascertaining whether or not there was any oil in or under the ground; and plaintiffs further say that, at and before the date of the said contract and agreement hereinbefore and hereinafter mentioned, describd, and set forth, they were engaged in such work in the 'Sistersville Oil Field,' which field is situate in the county of Tyler and State of West Virginia. And plaintiffs further aver and say that heretofore, to-wit, on the said 10th day of April,

1893, at the county of Tyler and State of West Virginia, the said plaintiffs, for the consideration hereinafter and hereinbefore mentioned, described, and set forth, and at his (defendant's) special instance and request, agreed and promised the said defendant that they (the said plaintiffs) would bore, sink, and drill an oil well and hole on the said Laugherty lease, at the point thereafter to be designated by said defendant, to the oil-bearing sand, and to do said work in a good and workmanlike manner, for the consideration and price of eighty cents for each and every foot which they, the said plaintiffs, would have to drill and sink said well in order to reach said sand, and said plaintiffs agreed to furnish their own drilling tools. The plaintiffs aver and say that in consideration of all the foregoing facts, and in consideration that said plaintiffs agreed to drill said oil well and hole to said oil-bearing sand, he, the said defendant, undertook and faithfully promised and agreed with said plaintiffs that he (defendant) would furnish, when needed, a first-class rig and derrick, water, fuel, and casing necessary to drill, bore, and sink said well and hole, and said defendant further agreed to pay said plaintiffs the sum and price of eighty cents per foot for each and every foot deep so drilled by said plaintiffs, according to conditions and agreement hereinbefore set forth; and plaintiffs further aver and say that, pursuant to the said contract and agreement, they entered upon the execution of said work, just as soon as they possibly could after the date of said contract and agreement, by going upon said lease with the necessary tools and men to drill and complete said well, all of which said defendant had due notice; but plaintiffs' say that said defendant did not furnish fuel, water, and casing to plaintiffs with which to drill said well, as the defendant promised, and by reason of said failure the said plaintiffs were greatly delayed in their work in drilling said well, and were thereby damaged to a great amount, to-wit, the sum of two hundred dollars. Plaintiffs further aver and say that when said defendant did finally furnish sufficient fuel and water to commence said work, that they (the said plaintiffs) began drilling and boring said well, and drilled the same to the depth of eight hundred and fifty feet, when the rig and derrick so furnished by said defendant to drill said well gave out, and proved to be utterly insufficient to drill and complete said well. Plaintiffs further say that the walking beam of said rig fell down from its

proper position, and into the said derrick, which accident caused delay, and because of said delay, and because said rig gave out and was insufficient and defective, the earth and ground around said hole caved into said hole, and filled it up, and filled and caved into, around, on top of, and above a large amount of valuable tools, cables, and ropes belonging to said plaintiffs. The plaintiffs were compelled to, and by reason of said caving did, abandon and lose said tools, ropes, and cables, which tools, cables, and ropes were of great value, to-wit, four hundred dollars; and plaintiffs say that they thereby sustained damages by reason of said loss of said tools, ropes, and cables to amount of four hundred dollars, and without any fault of theirs, but because of the fault of said defendant. Plaintiffs also aver and say that, by reason of said caving of said well, they were compelled to and did abandon the same, and did move said rig and derrick to another location on said Laugherty lease, in order that they might drill said well, and they say that said removal was a great loss and damage to them, the said plaintiffs, to-wit, the sum of two hundred dollars; and plaintiffs aver that defendant had full and due notice of same; and said plaintiffs aver that said loss was not occasioned by any fault of theirs, but aver that the same was the fault of the said defendant; and plaintiffs aver that, because the earth and ground caved into and filled up said hole so drilled by plaintiffs, they lost and were thereby deprived of all the profits and emoluments which might and would otherwise have arisen and accrued to them from the drilling, boring, and sinking said hole and well to its completion, which profits and emoluments plaintiffs say would have amounted to the sum of one thousand five hundred dollars, and therefore plaintiffs aver and say that they were thereby damaged to amount of said additional sum of one thousand five hundred dollars.

"And plaintiffs further say that said defendant would not nor did not pay to the plaintiffs the said sum of eighty cents per foot for the drilling of said well, according to his promise and undertaking, and did not pay them the said sum of eighty cents per foot for the drilling of said abandoned well, nor would the said defendant, nor did he, pay plaintiffs for the time lost by them, nor for the tools lost by them, nor for the extra and unnecessary work and labor performed by them, because of the dereliction, wrong-doing, and carelessness of said defendant in failing to furnish fuel, water, and casing at the proper time, and in fail-

ing to furnish a good and sufficient rig and derrick, according to his said promises and undertakings, as in the foregoing counts set up, mentioned, and described.

"(5) And for this, also, that heretofore, to-wit, on the 10th day of April, 1893, at said county, in consideration that the said plaintiffs, at the special instance and request of said defendant, would drill and sink for the defendant, on the Laugherty farm, then owned and held as a leasehold by said defendant, in said county, an oil well into the oil-bearing said in a convenient time, and complete the same in a reasonable space of time thereafter; and, in further consideration that said plaintiffs would furnish and find for such purpose all the necessary tools and labor therefor,—the defendant undertook and faithfully agreed and promised the said plaintiffs that the said defendant on his part would furnish and supply a suitable and substantial derrick and rig to be used by said plaintiffs in the drilling of said oil well, suitable, substantial, and fit for such purpose, and that he would furnish casing for said well when needed in the progress of the drilling thereof; and, further, that he would furnish and supply the said plaintiffs fuel and water, to be used by said plaintiffs in and about the work and operation of said drilling of said well; and said defendant further undertook and faithfully agreed and promised to pay said plaintiffs the sum of eighty cents per foot for the work and labor done, and their furnishings in sinking and drilling said oil well; and said plaintiffs in fact say that heretofore, to-wit, on the ———— day and year aforesaid, at said county, they supplied and furnished themselves with all the tools and labor necessary for the prosecution and performance of said work of sinking and boring such oil well, in pursuance of their agreement and undertaking on their part to be done and performed, and entered upon the performance of said work, but that said defendant did not nor would not furnish and provide such suitable, substantial, and sufficient derrick and rig, as he had agreed and undertaken to do, but, on the contrary thereof, the defendant, not regarding his agreement and undertaking to furnish and supply such suitable and sufficient derrick and rig, furnished a derrick and rig which was defective, unsubstantial, and insufficient for the purpose for which intended, of which defectiveness and unfitness said defendant then and there had notice. With which said derrick and rig so furnished by defendant, with the furnishing of the plaintiffs, they, the said

plaintiffs, began and entered upon the performance and prosecution of said work of drilling said well for said defendant, and within a reasonable time, and drilled the said oil well for said defendant to the depth of eight hundred and fifty feet, at which depth and point in the drilling, by reason of the unfitness, weakness, and defectiveness of the said derrick and rig, of which the defendant had notice, the said derrick and rig gave way, fell, and became wrecked and ruined, without the fault or negligence of said plaintiffs, throwing the castings and walking beam thereof into and upon said well so drilled as aforesaid, thereby precipitating the plaintiffs' said tools, ropes, cables, and drills into said well, whereby, and by reason of the necessary delay caused by the falling and wrecking of said derrick and rig, the earth over and above said tools and drills so thrown and precipitated into said well caved in, and covered over said tools, so that the said tools, of great value, to-wit, of the value of five hundred dollars became fixed and fastened in the depths of said well, so that they could not be withdrawn and extricated therefrom, and said plaintiffs had to wholly abandon the same, and they became and were wholly lost to the plaintiffs, and the said well had to be plugged and abandoned; and said plaintiffs were compelled to and did abandon said location of said well, and in pursuance of their agreement and undertaking, and in performance of the same, constructed and erected, at their own cost and expense, a new derrick and rig, and on a new location, and proceeded to and did sink and drill an oil well for said defendant on said premises, the said defendant failing and refusing to rebuild or replace said derrick or rig, though often requested so to do.

"And said plaintiffs in fact further say that said defendant, in further disregard of his said promise, agreement and undertaking, did not nor would furnish casing, fuel, and water, at all times, when needed for the purpose of drilling said well, but, on the contrary thereof, failed and refused to furnish the same, and said plaintiffs were compelled to and did furnish the same, and because of such failure of said defendant to so furnish plaintiffs with the necessary water, fuel, and casing, at the time promised and agreed, they (plaintiffs) were compelled to, and they aver they did, pay several hands whom they had engaged to work on said well for several days' wages, while they were waiting for said fuel, water, and casing to be furnished by said defendant, which wages so paid amounted to the sum of two

hundred dollars, all of which said defendant had notice. Plaintiffs aver that they were damaged by reason of said failure to amount of two hundred dollars.

"And plaintiffs further say that said defendant did not nor would pay to the plaintiffs the said sum of eighty cents per foot for the drilling of said well, according to his promise and undertaking, and did not pay them the said sum of eighty cents per foot for the drilling of said abandoned well.

"Whereby, and by reason of the said non-performances and failure of said defendant to keep and perform his said contract, promises, and agreements as aforesaid, the said tools of the said plaintiffs became and were wholly lost to them, by reason of being fastened and lost in said well, and whereby, also, the said plaintiffs were compelled to pay, and did pay, to their hands and men, wages for several days, while waiting for fuel and water to commence work on said well, which sum amounts to two hundred dollars.

"And whereby also the said plaintiffs have lost and been deprived of their reasonable profits and advantages which they otherwise might and would have earned and derived from the completion of such well; and whereby said plaintiffs also were compelled to pay, lay out, and expend large sums of money in and about the necessary prosecution of said work, to-wit, the sum of five hundred dollars, which was rendered necessary by the non-performances of said agreement and contract by said defendant, by reason of all of which promises said plaintiffs have been damaged to the amount of one thousand five hundred dollars."

It is contended by appellant that the declaration is "inconsistent, ambiguous, and uncertain in each and every count." It is said to be "an elementary and fundamental rule in pleading that the declaration must allege all the circumstances necessary for the support of the action, and contain a full, regular, and methodical statement of the injury which the plaintiff has sustained, and the time and place, and other facts and circumstances, with such precision, certainly, and clearness that the defendant, thus informed of what he is called upon to answer, may be able to respond by a direct and unequivocal plea, with evidence to support it, and that the jury may be enabled to give a complete verdict upon the issue, and that the court, consistently with the rules of law, may give a certain and distinct judgment upon the premises." The declaration in this case is not perhaps

as symetrical and methodical as it might be, but it seems to be sufficiently so to give the defendant full notice of what is claimed. It will be seen that it is averred in the first special count that the said defendant undertook and then and there faithfully promised said plaintiffs to perform and fulfill said agreement, and promised in all things on the said defendant's part to be performed and fulfilled, and to furnish the said plaintiffs, when required by them, a first-class oil-well rig and derrick, and to furnish said plaintiffs all fuel, water, and oil-well casing whenever needed by said plaintiffs in drilling, boring, sinking, and completing said oil well. There is no complaint in this count except as to the rig and derrick. When plaintiffs first discovered that it was defective, they aver that they at once notified defendant, and asked him to furnish them with a good and sufficient rig with which to drill the well; and they aver that he sent, or caused to be sent, a man to repair the rig, and it is presumed he repaired it, as plaintiffs aver that they then proceeded with the drilling and boring, and had no more serious trouble with it until they had reached the depth of eight hundred and fifty feet, when the walking beam fell from its proper place. They at once notified the defendant of the accident, but before the rig and derrick could be repaired the earth and dirt around the sides of said hole caved into said hole, and filled it up, and thus destroyed it as an oil well, when they were compelled, through no fault whatever or neglect of theirs, to abandon the same. This seems to contain sufficient averments as to the said rig and derrick. The fourth count avers that, in consideration of what plaintiffs agreed to do, the defendant undertook and faithfully promised and agreed with said plaintiffs that he would furnish, when needed, a first-class rig and derrick, water, fuel, and casing, necessary to drill, bore, and sink said well and hole, and that plaintiffs, pursuant to the said contract and agreement, entered upon the execution of said work, by going upon said lease with the necessary tools and men to drill and complete said well, of all of which said defendant had due notice; but plaintiffs aver that said defendant did not furnish fuel, water, and casing to plaintiffs with which to drill said well, as the defendant promised, by reason whereof they were greatly delayed in their work, and damaged to the amount of two hundred dollars. Taking into consideration the contract as stated, that defendant promised and agreed to furnish said water, fuel, and casing when needed, the fact that plaintiffs

aver that defendant had due notice that plaintiffs were on the ground with their tools and men ready to go to drilling is equivalent to an averment that demand was made upon him to furnish the water, fuel, and casing, as he had agreed to do. It is contended by defendant that the averment in the fourth count, that by reason of said caving of said well plaintiffs were compelled to and did abandon the same, and did move said rig and derrick to another location on said Laugherty lease, in order that they might drill said well, and that said removal was a great loss and damage to them, to-wit, the sum of two hundred dollars, is inconsistent with the averment in the fifth count that they were compelled to and did abandon said location of the well, and in pursuance of their agreement and undertaking, and in performance of the same, constructed and erected at their own cost and expense a new derrick and rig on a new location, and proceeded to and did sink and drill a well for said defendant on said premises, the said defendant failing and refusing to rebuild or replace said derrick or rig, though often requested so to do. This averment in the fifth count is the same averment contained in the fourth count relative to rebuilding, but in different form, and is not inconsistent with it, but in the fifth count the damage for such rebuilding is not averred. In *White* v. *Romans,* 29 W. Va. 573, (3 S. E. 15), where the defendant had failed and refused to furnish that which he had agreed to furnish to enable the plaintiffs to complete their contract, JUDGE SNYDER, in delivering the opinion, says: "Such refusal by the defendant would not excuse the delivery of the timber by the plaintiffs, but would only authorize them to buy and furnish such means at the cost of the defendant, and recover such cost, or the amount expended by them for the same, from the defendant. This would constitute the damages sustained by the plaintiffs. In neither of the counts of the declaration is there any averment upon which any such damages could be recovered." In the case at bar the averment is that the defendant refused to furnish such rig and derrick, and that the rig and derrick were removed to another location by the plaintiffs, which caused them a loss and damage in the sum of two hundred dollars.

Appellant makes an additional assignment of error in his brief, that "on the 15th of April, 1895, an order in this action was entered by the court showing a trial before a jury, and the plaintiffs suffered a nonsuit. A motion to set aside such nonsuit was made,

but was never acted upon by the court, and such nonsuit was never set aside. Without any regard to this order of nonsuit or to their motion, the plaintiffs filed their first and second amended declarations." Appellant contends that said order of nonsuit became a final judgment against the plaintiffs by operation of law, on the last day of the August term, 1895, and that all subsequent proceedings in the action after the entry of such order of nonsuit are *coram non judice,* and that the proceedings upon the first and second amended declarations are void, and that the verdict and judgment of the plaintiffs upon such proceedings are also void and of no effect, and that any execution issued upon such judgment should be quashed. Appellant bases his position on this point upon section 46, chapter 125, Code, which provides as follows: "Every judgment entered in a clerk's office in a case wherein there is no order for an inquiry of damages, and every nonsuit or dismission entered therein, shall, if not previously set aside, become a final judgment on the last day of the next succeeding term of the court wherein the action is pending." In the case at bar the judgment of nonsuit did not originate in the clerk's office, but was a judgment entered in court, and immediately upon its being entered a motion was made to set it aside, and that motion docketed, and remains in said court undisposed of; and, with that motion remaining on the docket, the court could at any subsequent term thereof either overrule said motion, or set aside the judgment. This non-suit, and the motion to set it aside, seem to have been overlooked by both parties. The amended declarations were filed, the issues made up, and the cause tried by jury, verdict and judgment rendered, and no motion made or advantage taken of it by the defendant, which he could have done at any time before the trial, and which, if called to the attention of the court by the defendant as a bar to a proceeding, would have been set aside at the asking of the plaintiffs. Nonsuits entered upon default do not involve the merits of the case, and they are set aside when desired by the plaintiff. It seems to me that, under section 3 of chapter 134 of the Code, it is too late now for the defendant to raise the question for the first time in this Court. Not having taken advantage of it in the court below, he is estopped, after trial, verdict and judgment, from raising the question in this Court.

The second assignment is not setting aside the verdict of the jury because the evidence produced upon the trial does not show

any contract or obligation entered into by and between the defendant with plaintiffs. This assignment is based principally on the evidence of the plaintiff D. F. Connolly, when he uses the pronoun "I" most of the time in speaking of the contract, as though he had made it in his own name. I find that, in giving his testimony, he uses both the pronoun "I" and the plural "we" and "us." It was a question for the jury as to whether there was any liability to the plaintiffs or to the plaintiff D. F. Connolly alone.

Assignment 3, based on bill of exceptions No. 1, is an objection to the question asked the plaintiff D. F. Connolly: "By reason of the fact that casing, water, and fuel wasn't furnished according to contract, how many days did you lose, and what was the damage?" Objected to because no account had been filed with plaintiff's original or amended declaration, claiming any such damage. The account filed shows two items, under either of which this question might properly be asked: First, "Amount paid labor while waiting on water and fuel, ninety-two dollars and forty cents;" second, "Damages for violation, non-performance of contract by defendant made with plaintiffs to drill an oil well in Tyler County, seven hundred dollars."

Fourth assignment is of the same character,—objection to the question asked the same witness, "What would be the total damage by reason of the defendant failing to furnish that casing and water? In that include every item of damage that you think legitimately belongs,—your own loss of time, money paid out, or any other damage." Objected to for the same reason.

Fifth assignment: Objection to the question asked the same witness, "Did you do everything you could with that well to extricate those tools and get them out?" The only objection to this question could be that it is leading. The answer is entirely proper, as the witness, instead of answering either "Yes" or "No," answered fully all they did to try to get the tools out. So that, if the question were properly objected to, the answer was unobjectionable.

Assignment No. 6, based on bill of exceptions No. 4: Objection to the question, "State whether or not you used due diligence in trying to extricate those tools;" which is disposed of in the same manner as the last assignment, the answer being entirely unobjectionable.

Seventh assignment, based on fifth bill of exceptions, to the

overruling of defendant's objection to certain questions asked by plaintiffs of D. F. Connolly. The one especially objected to is as follows: "In your judgment, you did everything in your power in trying to save the hole?" While the question is leading, and not strictly proper, yet its answer in the affirmative could only be cumulative, as the witness had shown by his testimony that he could only answer it in the affirmative, and the defendant was not prejudiced by it. The other questions were with reference to the value of certain tools and appurtenances lost in the hole or well, and neither impertinent nor improper.

Eighth assignment, on sixth bill of exceptions, on the court overruling objection to the plaintiff's question put to witness D. F. Connolly, "Was you ever directed or ordered to rebuild this rig?" Objected to because "it tended to develop a matter not in the contract and not in issue." The defendant furnished the rig and derrick, such as it was. About this there is no dispute. So that under the contract, whether express or implied by reason of custom or usage in such case, it was his duty to furnish it, and, this being so, it was his duty to furnish a good and sufficient rig and derrick; and having failed to furnish it when demanded, under the rulings in *White* v. *Romans, supra,* plaintiffs would be authorized to repair or rebuild said rig and derrick, and charge the cost of it to defendant, even without any directions or direct authority from the defendant, to enable them to complete their contract to bore the well, unless, having accepted it as sufficient for the intended purpose, it had become the duty of plaintiffs to keep it in repair, which was a question for the jury from the evidence.

Ninth assignment, on bill of exceptions No. 7, in overruling objection of the defendant to the question propounded by plaintiffs to witness D. F. Connolly, "Leaving out of consideration the items which we have already proven,—the stems, rope sockets, 10-inch bit, Phillips jars, slip socket, and labor paid for while waiting on water,—what was you damaged by reason of the defectiveness of this rig?" Whether the items mentioned as already proven had been so proven or not was a question for the jury, there having been evidence tending to prove them, and the fact of plaintiffs' counsel assuming in the question that they had been proven would have no more weight or influence with the jury than his assertion in the argument to the jury that any given fact about which evidence had been introduced had been well

proven. While this is not the most approved method of questioning witnesses, and ought not to be indulged in, it is not sufficient to reverse a judgment.

Tenth assignment, on bill of exceptions No. 8: One of the plaintiffs, D. F. Connolly, is asked on cross-examination the following question: "You say you are an experienced oil-well driller and contractor. Isn't it the custom in oil fields, when a contractor takes a well to drill, that he takes it at his own risk as to cave or anything of that kind,—all accidents?" Counsel objected to the question, and objection sustained. This involves the question whether it is competent to introduce testimony to prove custom or usage, in aid and explanation of contracts, without pleading it specially, as held in *Governor* v. *Withers* 5 Grat. 24 (Syl., points 1, 2), and in *Harris* v. *Carson*, 7 Leigh 632, where it is held that "a practice or usage in opposition to the common law, however general it may be, has no force in this country on the ground of custom, because not immemorial." Judge Cabell in the opinion of the court in that case says: "A custom, to be valid, must be as old as the common law. It must be immemorial; and, if the particular custom be proved to be immemorial, it necessarily excludes the general custom or common law. * * * But the case is widely different in this country. Our ancestors brought with them the common law or general customs of England, but none of the particular customs." But in *Pleasants* v. *Pendleton*, 6 Rand. 473, it is held that "an established usage constitutes the common understanding of parties, and ought to be resorted to as an interpreter of the contract." And later decisions decidedly tend to the admissibility of proof of custom and usage under the general issue. In *Hansbrough* v. *Neal*, 94 Va. 722, (27 S. E. 593), it is held: "In the absence of any express agreement as to the amount or times of payment for work contracted to be done, parol evidence is admissible to show a certain usage of the business and of the locality, known to the parties, or so general and well settled as to raise the presumption that the parties dealt with reference to the usage, and with a tacit understanding that their rights and responsibilities should be determined thereby;" and it is there held that it is unnecessary to aver in the pleadings a local custom or usage by which the value of the services are fixed, as the plaintiff is entitled to recover what is usual and customary for like services. And in our own State, in *Johnson* v. *Burns*, 39 W. Va. 658 (syl., point 3), (20 S. E.

686), "When a contract does not provide in a given particular, particular local custom may be proven for its interpretation, so it be brought home to the knowledge of the person to be affected by it, and so it do not violate fixed statutes or common law. Warv. Vend. s. 14. "It is a fundamental proposition that custom and usage are supposed to enter into and form a part of all contracts where the use or custom prevails, in reference to the matter to which the contract relates, and that the contracting parties are not only presumed to be acquainted with such usage, but contract with reference to it. * * * The principle upon which proof of usage is admitted is that it serves to explain and ascertain the interest of the parties upon some point as to which their contract is silent, and as to which there existed a usage so long continued and well known as to raise a fair presumption that it was within the view of the contracting parties when they made their agreement and contracted with reference to and in conformity with such usage, thus explaining the silence or omission of any express provision of the contract itself. * * * It cannot be introduced in opposition to any principle of general policy, nor if it be inconsistent with the terms of the agreement or against the established principles of law." Mr. Starkie, in his work on Evidence, at page 709 (side p. 710), in speaking of the admissibility of evidence of custom and usage, says: "The principle upon which such evidence is admissible seems to be a reassonable presumption that the parties did not express the whole of their intention, but meant to be guided by custom as to such particulars as are generally known to be annexed by custom and usage to similar dealings." 27 Am. & Eng. Enc. Law, 711, and cases cited, where the subject of usages and customs is elaborately and well discussed. 1 Add. Cont. p. 329; *Kilgore* v. *Buckley*, 14 Conn. 390.

Eleventh assignment, bill of exceptions No. 9, overruling defendant's objection to this question: "What, in your judgment, was the damage sustained by the firm of Connolly & Johnson by reason of the defectiveness of the rig?" Objected to because the answer of the witness would be a mere expression of opinion, if responsive to the question. The answer was responsive to the question, and I think fully answers the objection as well: "They sustained the loss of just what those tools were worth, and that labor, and that eight hundred and fifty feet of drilling, and that

loss of time,—whatever they paid out when not doing anything, by the direct cause of that rig playing out."

Twelfth assignment, bill of exceptions 10, appellant offers no reason for his exception to the ruling of the court.

The thirteenth, fourteenth, fifteenth, and sixteenth assignments, based on bills of exceptions 11, 12, 13 and 14, relate to the rulings of the court refusing to permit evidence to prove what the customs and usages of the oil fields were in relation to the matters touching which the questions were asked, the witnesses showing themselves to be competent to testify on such matters. Such evidence should have been admitted.

The question set forth in seventeenth assignment, fifteenth bill of exceptions, asked the witness, is: "Suppose the contractor discovers his machinery in that condition, and continues to run; state whether or not he accepts all probabilities of the consequences. Is that ordinary care and diligence in the contractor?" being preceded by the following questions and answers: Question by plaintiffs on cross-examination: "If the pitman was properly lined up, and the jack posts in their proper places, and the walking beam hung properly, would there be any chance of that pitman coming off there, even without the ring on?" Answer: "Well, it would be owing a good deal to the way it was used. I have seen it come off when it was supposed they were properly lined up and everything all right, and I have seen them when they didn't come off when I knew they were not right." The defendant, by counsel, then asked the witness the following question: "If the conditions exist which you describe, how is it that would incline the pitman to come off?" Answer: "It might tend to shove the ring and pin out." The plaintiffs objected to said question, which the court sustained, and refused to allow it to be asked. The question as to whether the contractors exercised ordinary care and diligence, or whether they "accepted all probabilities of the consequences," was for the jury to settle from the evidence, and, if the court erred in ruling out the question, it was not calculated to prejudice the defendant, because it is fully covered by the very next question asked the witness, which he was permitted to answer without objection, viz: "Suppose that the jack posts in the position indicated and the pitman working there had a tendency as described to fall off, what would be the contractor's duty in order to save himself from injury?" Answer: "His duty would be to fix it."

The eighteenth assignment: "The court erred in overruling the defendant's motion to set aside the verdict of the jury, and grant a new trial, for the reasons specified in bill of exceptions No. 16, i. e., "that the verdict was contrary to the law and the evidence, and also that the damage fixed in the verdict is excessive,"—need not be discussed, except as to the matter of excessive damages. There was no evidence introduced on the part of appellant touching the question of damages. Connolly in his testimony says: "Leaving out the tools and money paid and such things, we would be damaged six hundred and eighty dollars;" that he made an itemized bill, which shows one thousand three hundred and forty dollars and twenty-six cents, which did not include anything for his time; and stated that their total damage would be in the neighborhood of one thousand six hundred dollars, and stated it to be one thousand five hundred dollars. This proof was made without objection, and no attempt made to meet the question of damages at the trial by appellant. Appellant claims there was a novation of the contract; that he employed Connolly to do the work, but afterwards told him he had sold out to Carter, and that he must look to Carter for settlement. Connolly admits that appellant referred him to Carter, but claimed that he (Carter) was only the agent of appellant, attending to his business, and denies that he had any contract with Carter, or accepted a novation of the contract. This is a question for the consideration of the jury on the evidence in the case.

For the reasons herein given, the judgment will be reversed, the verdict set aside, and the cause remanded to the circuit court of Tyler County for a new trial to be had therein.

*Reversed.*